William Edward McCORMACK et al., Appellants,

v.

Evan F. LINDBERG, M.D., Respondent.

No. C5-83-1448.

Court of Appeals of Minnesota.

June 12, 1984.

**32**

Gerald R. Keating, Freeman, Gill, Egan, & Keating, Minneapolis, for appellants.

Robert M. Frazee, Robert E. Salmon, Meagher, Geer, Markham, Anderson, Adamsom, Flaskamp & Brennan, Minneapolis, for respondent.

Heard, considered and decided by POPOVICH, C.J., and FORSBERG and RANDALL, JJ.

## OPINION

RANDALL, Judge.

This appeal arises from a medical malpractice action brought against Dr. Lindberg, a thoracic cardiovascular surgeon, by the patient and his wife. The jury returned a special verdict finding that Dr. Lindberg had not been negligent. After the trial court denied plaintiffs' motions for judgment n.o.v. or for a new trial, judgment was entered. Plaintiffs appeal. We reverse and remand.

### FACTS

William McCormack suffered from a condition known as "thoracic outlet syndrome," which is caused by compression of vessels and nerves in the thoracic (chest) region and results in pain and numbness in the arm. On January 28, 1977, he underwent an operation to remove one of his ribs as treatment for this condition. The operation, a first rib resection, was performed only after conservative, non-intrusive treatments had been unsuccessful.

During the operation, which was performed by the defendant, a board-certified thoracic cardiovascular surgeon, the subclavian artery (the artery which carries blood to the arm) was accidentally cut or torn, either by a device used to cut the rib or by a fragment of bone. Because of the lacerated artery, McCormack required extensive blood transfusions. No transfusions would have been required if no complications had occurred during the procedure. Following the surgery, McCormack developed a permanent case of chronic non-A, non-B hepatitis, accompanied by cirrhosis of the liver. According to expert testimony, there was a greater than 90% probability that the hepatitis was caused by the blood transfusions. In addition to the hepatitis, McCormack suffered great pain and lost most of the use of his left arm. The underlying condition, thoracic outlet syndrome, was apparently not alleviated by the rib resection.

At trial, plaintiffs called Dr. Hendrick Barner, a board-certified thoracic cardiovascular surgeon on the teaching staff of St. Louis University Medical School, as an expert witness. Dr. Barner is qualified to perform a first rib resection, but has never done so. He has performed cervical rib resections (removal of one or more cervical ribs) and other procedures in the area of the thoracic outlet, and has treated patients who have had first rib resections. The court permitted Dr. Barner to testify about a similar operation, but placed limitations on his ability to testify directly about a first rib resection. He did testify, however, that either of the only two possible causes of the arterial laceration would have involved a deviation from the standard of care. Dr. Barner stated on cross-examination that complications can occur in this kind of surgery even in the absence of negligence.

On direct examination, the defendant, Dr. Lindberg, testified that he had no present recollection of the specific circumstances of McCormack's operation, but testified to his ordinary practices in performing first rib resections in order to establish what he probably did during McCormack's operation. The trial court overruled plaintiffs' objection on foundational grounds. Dr. Lindberg testified that he had per-

formed 10–20 first rib resections over the course of several years, and that the order of procedures during the operation—specifically, whether he began by cutting the posterior (back) end of the rib or the anterior (front) end of the rib—varied from patient to patient.

## ISSUES

I. Did the trial court err in refusing to allow plaintiffs' counsel to cross-examine the defendant through use of a learned treatise recognized by another expert as authoritative?

II. Did the trial court err in restricting the testimony of plaintiffs' expert about a first rib resection because he had never performed one, even though he was otherwise qualified?

III. Did the trial court err in allowing the defendant to testify as to his "usual and customary" procedure in performing a first rib resection after he had testified he had no recollection of the operation performed on the plaintiff?

IV. Did the trial court err in instructing the jury on the standard of care?

## ANALYSIS

### I

During the plaintiffs' redirect examination of Dr. Barner, the plaintiffs' attorney attempted to read from an article in a medical journal, after he had established that, in Dr. Barner's opinion, the article was authoritative. The defendant's attorney objected on the basis that the question went into matters not raised on cross-examination. During the bench conference which then took place, the plaintiffs' attorney decided not to attempt to use the article in his examination of Dr. Barner, but to use it to cross examine Dr. Lindberg if he took the stand:

> MR. KEATING: Well, on second thought I will leave this for cross-examination. I would ask the Court for the ruling that this has been recognized—that Dr. Roos and his articles of surgery through the testimony of Dr. Barner has been recog-

nized as an authority on the subject of thoracic outlet syndrome surgery, and I will reserve at this time to use it on cross-examination in the event Dr. Lindberg or Gannon is called.

> THE COURT: You won't be able to use it with Dr. Lindberg or Dr. Gannon unless he recognizes it as an authority.

> MR. KEATING: I think the rules have been changed where they state if any expert has recognized the articles of authority that you can use this—put this in evidence and ask another expert in regards to the material in the articles.

> THE COURT: That is not my understanding of the Rules of Evidence.

> MR. FRAZEE: That is not correct.

> THE COURT: They have been screwing up the Rules of Evidence so badly now that we judges who practiced law here for years don't understand what they're talking about today.

> MR. FRAZEE: I think the Rules of Evidence are as they have always been, that they may be used if the witness recognizes it.

When Dr. Lindberg later testified, the plaintiffs' attorney did not attempt to cross-examine him by using the article. Dr. Lindberg argues that because no attempt to use the article was made, the issue of whether the court's refusal to allow it to be used was erroneous was not preserved for review.

■ Rule 46, Rules of Civil Procedure for the District Courts, provides that a party must, at the time a court's ruling is made or sought, make known to the court the action which he desires the court to take or his objection to the action of the court and his grounds therefor. The informality of a court's ruling on an objection should not bar its review. *See Minneapolis-St. Paul Metropolitan Airports Commission v. Stawicki*, 269 Minn. 264, 130 N.W.2d 503 (1964) (court's statement, after he had been informed of counsel's intent to use certain evidence, that "my view of the law" is that such evidence is inadmissible,

held to be an adverse ruling sufficient to preserve the question for appeal.)

■ Here, plaintiffs asked the court for a ruling that the article had been recognized as authoritative and could be used to cross-examine Dr. Lindberg. The court's answer indicated that such use of the article would not be allowed. Any further attempts by plaintiffs to use the article or to argue for its use might have been interpreted as an attempt to argue with the court or as disrespect for the court. The exchange between plaintiffs' counsel and the court was sufficient to preserve the issue for review. Plaintiffs "clearly informed the court as to the action desired ... and made unnecessary any formal exception at a later time." *Mockler v. City of Stillwater,* 246 Minn. 39, 74 N.W.2d 118 (1955).

■ Minnesota Rules of Evidence, Rule 803(18) provides that "... statements contained in published treatises ... established as a reliable authority by the testimony or admission of the witness *or by other expert testimony* or by judicial notice ..." are not excluded by the hearsay rule when called to the attention of an expert witness upon cross-examination or relied upon by him in direct examination (emphasis added). The trial court's statement that "You won't be able to use [the article to cross-examine] Dr. Lindberg ... unless he recognizes it as an authority," is clearly erroneous. As long as the article was established as a reliable authority by plaintiffs' expert witness, it could be used to cross-examine Dr. Lindberg in his capacity as an expert witness.

Whether the trial court's error in refusing to allow plaintiffs to cross-examine Dr. Lindberg using the Roos article was so prejudicial as to require reversal is not clear. Since other errors, discussed later, require reversal, however, we need not decide whether this was harmless error. On retrial, such cross-examination should be allowed.

## II

■ The trial court allowed the plaintiffs' expert witness, Dr. Barner, to testify about procedures followed in a first rib resection, about hazards and precautions of a similar operation (cervical rib resection), and about the general standard of care in similar operations and operations on that area of the body generally. However, the trial court sustained an objection to the question, "What ... are the standards that a thoracic cardiovascular surgeon, ... [should use] in avoiding injury to that subclavian artery in doing the surgery?" on the ground that, while the expert was a thoracic cardiovascular surgeon, he had never performed a first rib resection. The expert was allowed to testify about other, similar operations that he *had* performed, and he did testify that either of the two ways McCormack's artery could have been lacerated could have resulted only from a breach of the standard of care.

The standards to be used in determining whether an expert should be allowed to testify as to a particular matter were set forth in *Cornfeldt v. Tongen,* 262 N.W.2d 684 (Minn.1977). Initially, the competence of a witness to testify on a particular matter is a question of fact peculiarly within the province of the trial judge, whose ruling may not be reversed unless it is based on an erroneous view of the law or is clearly not justified by the evidence. "With respect to medical witnesses, [the Supreme Court has] required both sufficient scientific knowledge of and some practical experience with the subject matter of the offered testimony." 262 N.W.2d at 692.

The *Cornfeldt* court went on to quote from ·*Swanson v. Chatterton,* 281 Minn. 129, 136, 160 N.W.2d 662, 667 (1968), which, in turn, quoted from *Pearce v. Linde,* 113 Cal.App.2d 627, 629, 248 P.2d 506, 508 (1952), that

> the definitive criteria in guidance of the trial court's determination of the qualifications of an expert witness are recognized ... to rest primarily on 'occupational experience' ... He must have had

basic education and professional training as a general foundation for his testimony, but it is a practical knowledge of what is usually and customarily done by physicians under circumstances similar to those which confronted the defendant charged with malpractice that is of controlling importance in determining competency of the expert ...

262 N.W.2d at 692–693 (citations omitted).

■ It is true Dr. Barner had never performed a first rib resection and, according to his testimony, had never even watched one performed. Nonetheless, to say that a surgeon with as much experience as Dr. Barner had in performing operations in the same area of the body had no "practical knowledge of what is usually and customarily done by physicians" under similar circumstances is clearly not justified by the evidence. Dr. Barner was competent to testify as an expert concerning all aspects of cardiovascular thoracic surgery in general, including a first rib resection. The fact that he had not performed that particular operation goes to the weight of Dr. Barner's testimony, not its admissibility.

Once again, given that Dr. Barner was allowed wide latitude to testify, and did, in fact, testify that the only two possible ways the artery could have been cut could only result from a breach of the standard of care, it is doubtful whether this error, alone, would have required reversal. However, Dr. Barner should be deemed competent to testify regarding a first rib resection on retrial.

### III

■ After Dr. Lindberg testified that he had no specific recollection of the operation on McCormack, he described his usual procedure in performing a first rib resection. Plaintiffs objected on the ground that Dr. Lindberg was attempting to use prior conduct to prove that, on this occasion, he had acted in conformity therewith. The objection was overruled, and plaintiffs argue that such ruling was error. Defendant now contends that the testimony was admissible as habit testimony under Rule 406, Minnesota Rules of Evidence. The Committee Comment to that rule adds that "habit" should be defined as "one's regular response to a repeated specific situation."

The Committee Comment also provides that "[w]hether the response is sufficiently regular and whether the specific situation has been repeated enough to constitute habits are questions for the trial court." Dr. Lindberg testified he had performed first rib resections 10–20 times over the course of "several years." He also testified that the operation varies depending upon many factors, including the size and age of the patient. Whether procedures during an operation that one has performed 10–20 times over several years and which vary from patient to patient are so automatic as to be admissible as habit is arguable. However, it need not be addressed here, because Dr. Lindberg, besides being the doctor who performed the operation at issue, was also an expert witness. He was not testifying to his usual and customary procedure in order to prove that he acted in conformity with it, but merely to inform the jury of what such an operation entails. Dr. Lindberg had already testified several times that he could not remember McCormack's operation. In addition, in the "usual and customary" operation he described, no complications occurred. It would have been clear to the jury that, unlike the case in Dr. Lindberg's "usual and customary" operation, complications did occur in McCormack's surgery, whether the result of negligence or not. As long as it is clear that Dr. Lindberg is not testifying specifically about an operation he cannot remember, he should be allowed to tell the jury how he usually performs a first rib resection. This was a close question. *See* Minn. R.Evid. 602. We find the trial court did not err in overruling plaintiffs' objection.

### IV

The trial court instructed the jury on the standard of care as follows:

Now, with respect to the duty of a doctor in performing surgery or providing other

medical services to a patient, it is the law that in performing professional services for a patient a doctor must use that degree of skill and learning which is normally possessed and used by doctors in good standing in a similar practice, in similar communities, and under like circumstances.

The plaintiffs argue that the court's failure to instruct the jury that specialists must be held to a national standard or that specialists are required to exercise that degree of skill and learning exercised by other specialists was reversible error. We agree.

■ Specialists are held to a national standard of care. *Christy v. Saliterman*, 288 Minn. 144, 179 N.W.2d 288, 302 (1970). Not only did the trial court instruct the jury here that the standard to be applied was that of "... doctors in good standing ... in similar communities ...," without mentioning the national standard, the court also stated, while plaintiffs' expert was on the stand, that "what they do in St. Louis does not necessarily mean they do the same thing in the upper Midwest and Minneapolis. It's in this community." In light of the fact that plaintiffs' expert was from St. Louis, the trial court's failure to inform the jury of the national standard of care, coupled with its gratuitous remark, could logically have caused the jury to discount the expert's testimony, and was thus reversible error.

Additionally, the jury was not instructed that a specialist must be held to the standard set by other *specialists*, not just other doctors. The language "in a similar practice" in the instructions was not sufficient to inform the jury that a specialist must be held to a higher standard. The jury must be instructed that a specialist must use the knowledge, skill and care which specialists in the same field would use in similar cases and circumstances. Hetland and Adamson, Minnesota Practice, JIG II, 426 G–S.

■ Plaintiffs also contend that instructing the jury that a doctor "is not responsible for an error in judgment in choosing between accepted methods of treatment," was erroneous, since the evidence did not show that any choice was made by defendant between alternative accepted methods of treatment. However, plaintiffs' expert testified he did not use first rib resections as a method of treating thoracic outlet syndrome. The jury could have inferred from that testimony that the operation was not the best choice of treatments. For this reason, the instruction was proper.

### DECISION

The trial court erred in refusing to allow plaintiffs to cross-examine the defendant using a "learned treatise," and erred in restricting plaintiffs' expert's testimony. The trial court committed reversible error in failing to inform the jury that a specialist must be held to a higher standard of care and judged by national standards.

Reversed and remanded for new trial.