**STATE of Minnesota, Respondent,**

v.

**James Robinson POOLE, Appellant.**

**No. C3–91–1963.**

Court of Appeals of Minnesota.

Aug. 11, 1992.

Review Granted Sept. 30, 1992.

See also 472 N.W.2d 195.

**540**

Hubert H. Humphrey, III, Atty. Gen., Mary J. Theisen, Sp. Asst. Atty. Gen., St. Paul, for respondent.

Bruce A. Peterson, Popham, Haik, Schnobrich & Kaufman, Minneapolis, for appellant.

Considered and decided by SHORT, P.J., and FORSBERG and SCHUMACHER, JJ.

## OPINION

SHORT, Judge.

James Robinson Poole, a licensed medical doctor, was convicted of 16 counts of third and fourth degree criminal sexual conduct for acts committed against 11 female patients between 1987 and 1990. On appeal, Poole argues (1) Minn.Stat. §§ 609.344, subd. 1(k) and 609.345, subd. 1(k) are vague, ambiguous and were misused by the state; (2) two search warrants were insufficiently specific and not supported by probable cause; (3) a change of venue over his objection denied his constitutional rights to trial; (4) the trial court abused its discretion by making certain evidentiary rulings; (5) inclusion of alternative dates denied him his right to a unanimous jury verdict; and (6) six consecutive sentences unfairly exaggerated the criminality of his conduct. We affirm, but modify the sentence.

## FACTS

In early 1990, Poole's cousin reported two incidents of sexual misconduct by Poole to the police. The incidents occurred in 1979 when the cousin was fourteen years old. The first incident occurred when Poole entered a bedroom where the teenager was sitting, and told her she needed a pelvic exam. The second incident occurred two days later, when Poole fondled the girl underneath a blanket while riding in the back seat of the car. The police taped a 1990 telephone conversation between Poole and the cousin in which Poole admitted both incidents and agreed his actions in the car were wrong.

In April and August of 1990, the police executed search warrants on Poole's home, his clinic and the Traverse County Public Health Nursing Services. The warrants authorized seizure of, among other things, patient lists and records for all female patients at least 10 years old at the time they visited Poole. The police seized a large number of patient files. Some patients were then interviewed by agents of the Bureau of Criminal Apprehension. Only one of the eleven victims made an unsolicited complaint against Poole to the authorities.

Poole was charged with 17 counts alleging sexual penetration or sexual contact. He was charged with accomplishing the crimes by representing that his actions served a medical purpose. All but three of the 17 counts alleged the criminal sexual conduct occurred on alternative dates, representing the patients' documented appointments with Poole.

The trial judge initially assigned to the case ordered a change of venue on his own motion. Following that judge's recusal, the change of venue was confirmed by another trial judge over the objection of defense counsel. The trial was eventually held in Chippewa County, a neighboring county in the same judicial district.

At trial, the eleven victims testified Poole (a) repeatedly moved his fingers in and out of their vaginas for approximately 10–20 minutes and/or rubbed their clitorises during pelvic examinations, (b) engaged in a

painful procedure allegedly to stretch the perineum, (c) asked personal questions about their sex lives, (d) told them to undress while he remained in the room and offered them no dressing gown, and (e) performed monthly breast examinations. The trial court allowed *Spreigl* testimony from Poole's cousin concerning the 1979 incidents. Poole presented testimony from seven patients who had no complaints about the pelvic examinations conducted by Poole. Some proposed defense questioning was excluded on the grounds that there was no showing of habit or customary procedure.

The trial court instructed the jury that the sexual contact or penetration had to be "accomplished by means of a false representation that the [act] is for a bona fide medical purpose by a health care professional." The court defined "bona fide" as "authentic, legitimate, honestly undertaken in good faith without deceit or fraud." The jury returned verdicts of guilty on all but one of the 17 counts.

The trial court sentenced Poole on 14 of the counts. The court imposed presumptive sentence durations, with some sentences made consecutive and some concurrent. The aggregate sentence imposed was 18 years. The trial court acknowledged a petition and letters had been submitted by local residents on behalf of Poole, but also noted Poole had been warned about his practices by the Board of Medical Examiners in 1981.

## ISSUES

I. Is the misconduct of a health care professional covered by the statute?

II. Were the search warrants executed at Poole's clinic sufficiently specific and supported by probable cause?

III. Did the change of venue violate Poole's constitutional right to trial in the "county or district?"

IV. Did the trial court abuse its discretion by certain evidentiary rulings?

V. Was Poole denied his right to a unanimous verdict by the charging of alternative dates?

VI. Did the imposition of consecutive sentences aggregating eighteen years unfairly exaggerate the criminality of Poole's conduct?

## ANALYSIS

### I.

■ The construction of a statute is a question of law for the court, and is subject to de novo review on appeal. *Hibbing Educ. Assoc. v. Public Employment Relations Bd.*, 369 N.W.2d 527, 529 (Minn.1985); *State v. Moore*, 431 N.W.2d 565, 567 (Minn. App.1988). Penal statutes must be strictly construed. *See United States v. Gideon*, 1 Minn. 292, 296 (Gil. 226) (1856). A criminal statute must (a) define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited, and (b) establish adequate guidelines to govern law enforcement. *Kolender v. Lawson*, 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983); *State v. Newstrom*, 371 N.W.2d 525, 528 (Minn. 1985).

■ Minn.Stat. §§ 609.344, subd. 1(k) and 609.345, subd. 1(k) provide:

A person who engages in sexual penetration [contact] with another person is guilty of criminal sexual conduct in the third [fourth] degree if any of the following circumstances exists: * * * (k) the actor accomplishes the sexual penetration [contact] by means of false representation that the contact is for a bona fide medical purpose by a health care professional. Consent by the complainant is not a defense.

Poole argues these statutory provisions are vague and ambiguous, and they do not cover the conduct of a health care professional. We disagree. Poole cannot bring a facial challenge to the statutes because the statutes do not reach constitutionally protected conduct. *See Kolender*, 461 U.S. at 358–59 n. 8, 103 S.Ct. at 1859 n. 8 (1983). The issue before us is whether the statutes are unconstitutionally vague with respect to Poole's conduct. *See State v. Becker*, 351 N.W.2d 923, 925 (Minn.1984).

■ Poole argues the phrase "bona fide medical purpose," is vague because it could set either a subjective or an objective standard. We disagree. The medical profession, by its very nature, implies objective standards. The term "medical purpose" implies some objective basis for believing sexual contact or penetration is justified. The term "bona fide medical purpose" put Poole on notice of what conduct is prohibited. He testified there was no medical reason for a physician to stroke a patient's clitoris and no medical authority to validate his "stretching" procedure. Under these facts, Poole had fair warning that his conduct was prohibited by the statutes.

■ Poole also argues the provisions under which he was convicted were not intended to apply to physicians. We disagree. The statutes set forth two areas where a misrepresentation could occur: either with respect to the medical purpose of the act or with respect to the professional status of the actor. The representation of the health care status of the actor is separate from that of the "medical purpose," and not necessary to it. The falsity could be *either* in the medical justification *or* in the health care status of the actor or both. Since the falsity of the medical purpose is independently shown here, the statutes are not ambiguous, and apply to Poole's conduct. Where the statutory language is clear and unambiguous, resort to the legislative history is not permitted. Minn.Stat. § 645.16 (1990); *Feick v. State Farm Mut. Auto. Ins. Co.*, 307 N.W.2d 772, 775 (Minn. 1981).

■ Poole further argues the statutes are ambiguous because they do not specify whether the "false representation" may be implied. This argument is without merit because Poole saw his patients for medical reasons, in an examining room at his clinic, where the entire examination was implicitly for medical purposes.

■ Poole does not claim the statutes in question invite arbitrary and discriminatory enforcement. Because the statutes are subject to reasonable construction and establish adequate guidelines to govern law enforcement, we conclude Minn.Stat. §§ 609.344, subd. 1(k) and 609.345, subd. 1(k) satisfy due process requirements and are not void for vagueness under either the federal or the state constitution.

## II.

■ The degree of specificity required in a search warrant is flexible, and depends on the circumstances and types of items involved. *United States v. Kail*, 804 F.2d 441, 445 (8th Cir.1986). There is no requirement that a search warrant be limited to the records of those clients or customers who have complained. *United States v. Sawyer*, 799 F.2d 1494, 1508 (11th Cir. 1986).

■ Poole argues the April and August 1990 search warrants for records at his clinic were insufficiently specific as to the items to be seized, and thus amounted to a prohibited "general" warrant. We disagree. Neither search warrant authorized a search of all records from Poole's general family practice. The warrants sought only those records of female patients at a certain age and older. *Cf. United States v. Hayes*, 794 F.2d 1348 (9th Cir.1986) (warrant authorizing search of all records documenting prescriptions of controlled substances was not overly broad). The supporting affidavits for the warrants established that Poole (a) remained in the room while his patients were dressing, (b) performed unnecessarily frequent breast and pelvic examinations on young female patients, (c) required nude "athletic physicals," (d) admitted sexually molesting a fourteen-year-old girl, and (e) admitted being attracted to young girls. Under those circumstances, the search warrants were sufficiently specific and were supported by probable cause.

## III.

■ A change of venue may be granted on the motion of the prosecution or defense, or on the court's own initiative. Minn.R.Crim.P. 25.02, subd. 1. Here, the trial court changed venue to Chippewa County because it found news articles, letters to the editor and public criticism by

the county attorney prevented a fair and impartial trial in Traverse County. Poole argues the trial court's change of venue over his objection violated his constitutional right to be tried "by an impartial jury of the county or district wherein the crime shall have been committed." Minn. Const. art. I, § 6. We disagree. Venue may be changed over the defendant's objection. *State v. Miller,* 15 Minn. 344 (Gil. 277) (1870). *See* Minn.R.Crim.P. 25.02, subd. 1 (incorporating *Miller* holding into rules of criminal procedure). *See also* Minn. R.Crim.P. 24.03, subd. 2 (making the entire state a "district" in regard to the constitutional provision).

### IV.

■ Decisions as to the admission or exclusion of evidence rest within the sound discretion of the trial court. *State v. Slowinski,* 450 N.W.2d 107, 113 (Minn.1990). A defendant claiming error in the trial court's reception of evidence must show the error substantially influenced the jury to convict. *See State v. Darveaux,* 318 N.W.2d 44, 48 (Minn.1982). The defendant bears the burden of showing both the error and the prejudice resulting from that error. *State v. Loebach,* 310 N.W.2d 58, 64 (Minn.1981).

#### A. Admission of An Eleven–Year–Old *Spreigl* Incident.

■ Poole argues the trial court abused its discretion in admitting evidence that he engaged in sexual misconduct in a car with his fourteen-year-old cousin. *See* Minn.R.Evid. 404(b). We disagree. The record demonstrates Poole admitted the incident occurred. While the incident did not involve a purported medical examination, the incident had probative value in establishing sexual intent. *See State v. Cichon,* 458 N.W.2d 730, 734–35 (Minn.App.1990) (14–year–old incident in which defendant touched breasts of young child was admissible in child sex abuse case where intent was at issue), *pet. for rev. denied* (Minn. Sept. 28, 1990). Moreover, in view of the nearly overwhelming evidence against Poole, the *Spreigl* evidence, if erroneously admitted, did not substantially influence

the jury to convict. *State v. Loebach,* 310 N.W.2d at 64.

#### B. Exclusion of Defense Evidence.

■ Poole also argues the trial court's exclusion of defense evidence denied him his right to explain his conduct to a jury. *See State v. Brechon,* 352 N.W.2d 745, 747–50 (Minn.1984). However, Poole personally explained his theory and manner of conducting pelvic examinations to the jury. In addition, he presented numerous witnesses who testified the examinations were not objectionable to them. While the trial court did exclude some evidence offered as proof of habit or instances of beneficial results from the exams, we find no abuse of discretion in these evidentiary rulings. There was no foundation in the form of a showing that Poole engaged in a habit or routine practice. *See* Minn.R.Evid. 406; *cf. McCormack v. Lindberg,* 352 N.W.2d 30, 35 (Minn.App.1984) (questionable whether procedures during operation which was performed infrequently and which varied from patient to patient "are so automatic as to be admissible as habit"), *order granting rev. vacated,* 373 N.W.2d 604 (Minn. 1985). Further, the evidence did not tend to establish that prolonged pelvic examinations or the practice of offering patients no gown, caused beneficial results or were reasonable medical practices. Under these facts, there was no preclusion of a defense.

### V.

■ Poole argues inclusion of alternative dates denied him his right to a unanimous verdict. We disagree. The jury unanimity requirement was not violated where a jury was not required to agree on whether defendant committed first degree premeditated murder or first degree felony murder. *Schad v. Arizona,* —— U.S. ——, ——, 111 S.Ct. 2491, 2504, 115 L.Ed.2d 555 (1991). Further, there is no constitutional requirement that the jury agree on the way in which a crime was committed. *State v. Hart,* 477 N.W.2d 732, 739 (Minn.App. 1991), *pet. for rev. denied* (Minn. Jan. 16, 1992). Without authority, Poole attempts to make the date of the offense more es-

sential than the means of commission. However, specific dates need not be charged or proven in a sexual abuse case. *State v. Becker*, 351 N.W.2d 923, 927 (Minn.1984). Poole could be convicted under the statute even if the victims could not remember the dates, provided the offenses all occurred after the August 1, 1987 effective date of the statute. Moreover, Poole did not contest the dates on which the victims saw him for exams, nor did he claim penetration did not occur on some of the dates. Under these circumstances, Poole has failed to show the dates were essential elements of the offense on which the jury was required to agree.

## VI.

 Finally, Poole argues the six consecutive sentences, totaling 18 years, unfairly exaggerate the criminality of his conduct. *See State v. Norris*, 428 N.W.2d 61, 70–71 (Minn.1988). Poole's conduct in this case is a serious criminal offense aggravated by (a) the young age of his multiple victims; (b) his abuse of a position of trust; and (c) the psychological harm caused his victims. *See, generally*, Minn.Sent.Guidelines II.D.2.b.(1); *State v. Carpenter*, 459 N.W.2d 121, 128 (Minn.1990) (abuse of position of trust as church youth worker). Despite the egregious facts, it is troubling that Poole received a sentence (216 months) substantially greater than the presumptive sentence for felony murder (150 months). While we give deference to the vast experience and sound judgment of the trial court in this case, our collective, collegial experience in reviewing criminal sentences suggests that an eighteen-year sentence unfairly exaggerates the criminality of Poole's conduct. *See State v. Norton*, 328 N.W.2d 142, 146–47 (Minn.1982). Accordingly, the sentence is modified to three consecutive terms of 48 months, or an aggregate sentence of 144 months, with the remaining terms being concurrent.

## DECISION

The convictions are affirmed, with the sentence modified to an aggregate term of 144 months.

Affirmed as modified.

SCHUMACHER, Judge (dissenting).

I respectfully dissent. A careful reading of the statute under which Dr. Poole was convicted demonstrates its ambiguity. The legislative history must then be consulted in determining the legislative intent. That history unmistakably shows the legislature intended that the "false representation" must be false both as to the reason for the penetration, and the health care status of the actor. However, Poole, as a physician, could not falsely represent he was a "health care professional." Therefore, his conduct is not covered by the statute.

The third degree criminal sexual conduct provision criminalizes sexual penetration if:

> the actor accomplishes the sexual penetration by means of false representation that the penetration is for a bona fide medical purpose by a health care professional.

Minn.Stat. § 609.344, subd. 1(k) (1990). The statute does not unambiguously define the "false representation" which makes the penetration a criminal act. This representation could be either as to the medical justification alone, or as to both the medical justification and the health care status of the actor. The ambiguity of the statute is demonstrated by the state's construction of it at trial, where the state argued that *only* a health care professional could violate the statute.

If the language of a statute is ambiguous, this court may consider "contemporaneous legislative history" in construing it. Minn.Stat. § 645.16(7) (1990); *Handle With Care, Inc. v. Department of Human Servs.*, 406 N.W.2d 518, 522 (Minn.1987). That history shows indisputably that the statute was passed in response to an imposter performing gynecological examinations at a hospital in St. Paul, and was intended to apply only to impostors. The distinction becomes all the more critical in view of Dr. Poole's testimony that his medical practices were done in good faith and that these practices had helped patients and even saved lives.

Thus, the conduct of a doctor such as Dr. Poole does not fall within the terms of the statute and his conviction must be reversed.