*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-1651**

State of Minnesota,
Respondent,

vs.

Michael Arthur Boelz,
Appellant.

Filed August 11, 2014
**Affirmed**
**Hudson, Judge**

Stearns County District Court
File No. 73-CR-12-5767

Lori Swanson, Attorney General, James B. Early, Assistant Attorney General, St. Paul, Minnesota; and

Janelle Kendall, Stearns County Attorney, St. Cloud, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, David W. Merchant, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Smith, Presiding Judge; Halbrooks, Judge; and Hudson, Judge.

## UNPUBLISHED OPINION

**HUDSON**, Judge

Appellant argues that the evidence is insufficient as a matter of law to sustain jury verdicts of second-degree criminal sexual conduct, maintaining that he did not have a

significant relationship with the complainant because he did not "reside" with her as required by Minn. Stat. § 609.343, subd. 1(h)(iii) (2010). He also argues that the state failed to prove beyond a reasonable doubt that he committed a single act of sexual contact under Minn. Stat. § 609.343, subd. 1(a) (2010), and that the prosecutor committed misconduct amounting to plain error affecting his substantial rights. We affirm.

## FACTS

After allegations that appellant Michael Arthur Boelz engaged in sexual contact with M.S. and C.S., the daughters of his girlfriend, P.R., the state charged him by amended complaint with two counts each of second-degree criminal sexual conduct, in violation of Minn. Stat. § 609.343, subd. 1(a) (2010), with the complainant under 13 years old and the actor more than 36 months older; and Minn. Stat. § 609.343, subd. 1(h)(iii) (2010), with the actor having a significant relationship to a complainant under 16 years old, and the abuse involving multiple acts committed over an extended period.

At appellant's jury trial, M.S., who was then 17, testified that she lived in the Pantown townhomes in St. Cloud with her mother from kindergarten until sixth grade. She testified that appellant visited "all the time" and "every day," that he and her mother would drink together, and that he would spend the night "every night." She testified that when she was between 9 and 12 years old, appellant would rub her breasts and vaginal area over her clothes "many times," "every other day," and "a lot of times," but she did not remember how many times or the specific days it occurred. She indicated that when the acts occurred, her mother was sometimes in the same room, but did not intervene.

2

M.S. did not tell appellant to stop or tell anyone else about it because she was scared. She finally told K.J., her foster parent, in 2012, after P.R.'s parental rights had been terminated. C.S., who was 16 at the time of trial, also testified that, when she was in about fourth grade, appellant also touched her breasts and vagina in the townhome.

K.J. testified that in 2012, C.S. became upset and eventually disclosed that appellant had sexually touched her. A St. Cloud police officer trained in the Cornerhouse interviewing process then interviewed both girls. M.S.'s Cornerhouse interview statements corroborated her testimony that abuse occurred. But C.S. testified that appellant touched her sexually only twice, while she had stated in the interview that the abuse happened several times a month. Appellant also testified and denied touching either child sexually.

The jury found appellant guilty of both counts relating to M.S., but not guilty of the counts relating to C.S. The district court sentenced appellant to 84 months on the violation of Minn. Stat. § 609.343, subd. 1(h) (iii), but did not sentence him on the additional count, which the district court considered to arise from the same behavioral incident. This appeal follows.

**D E C I S I O N**

**I**

Appellant maintains that the evidence is insufficient as a matter of law to convict him of violating Minn. Stat. § 609.343, subd. 1(h)(iii), arguing that the state failed to prove beyond a reasonable doubt that he had a significant relationship with M.S. because he did not "reside" in the same dwelling with her. The state maintains that this court

3

should not consider this issue because appellant failed to raise it in district court. Generally, arguments not raised below are waived. *Roby v. State*, 547 N.W.2d 354, 357 (Minn. 1996). But the Minnesota Rules of Criminal Procedure allow this court to review errors not raised below if they affect substantial rights. Minn. R. Crim. P. 31.02. Appellant's plea of not guilty required the state to prove all elements of the offense beyond a reasonable doubt. *State v. Clow*, 600 N.W.2d 724, 726 (Minn. App. 1999), *review denied* (Minn. Oct. 21, 1999). And "a conviction based upon anything less than 'proof beyond a reasonable doubt of every fact necessary to constitute the crime' violates the Due Process Clause of the Fifth Amendment" and constitutes plain error affecting substantial rights. *Id.* (quoting *In re Winship*, 397 U.S. 358, 364, 90 S. Ct. 1068, 1073 (1970)). We therefore address appellant's argument.

When reviewing a challenge to the sufficiency of the evidence, this court thoroughly analyzes the record to determine whether, based on the record and legitimate inferences drawn from it, the jury reasonably could find the defendant guilty of the offense. *State v. Chambers*, 589 N.W.2d 466, 477 (Minn. 1999). In doing so, we view the evidence in the light most favorable to the verdict and assume that the jury believed the evidence supporting the guilty verdict and disbelieved any evidence to the contrary. *State v. Fleck*, 777 N.W.2d 233, 236 (Minn. 2010). We will not disturb the verdict if the jury, acting with due regard for the presumption of innocence and the requirement of proof beyond a reasonable doubt, could reasonably conclude that the defendant is guilty of the charged offense. *State v. Alton*, 432 N.W.2d 754, 756 (Minn. 1988).

A person may be convicted of second-degree criminal sexual conduct under Minn. Stat. § 609.343, subd. 1(h)(iii), if that person "has a significant relationship to the complainant," who was under 16, and the abuse involved multiple acts committed over an extended time period. By statute, "significant relationship" includes "an adult who jointly resides intermittently or regularly in the same dwelling as the complainant and is not the complainant's spouse." Minn. Stat. § 609.341, subd. 15(3) (2010). Appellant argues that the state failed to prove beyond a reasonable doubt that he "reside[d] intermittently" with M.S. because he maintained a separate residence during the period that he stayed overnight at times with P.R.

The definition of "resides intermittently" presents a matter of statutory interpretation, which this court reviews de novo. *See State v. Hayes*, 826 N.W.2d 799, 803 (Minn. 2013) (stating that whether a defendant's conduct met the statutory definition of a crime presents a question of statutory interpretation, reviewed de novo). Our goal in statutory interpretation is to ascertain and give effect to legislative intent. *Sanchez v. State*, 816 N.W.2d 550, 556 (Minn. 2012); Minn. Stat. § 645.16 (2012). "If the [l]egislature's intent is clear from the statute's plain and unambiguous language, then we interpret the statute according to its plain meaning without resorting to the canons of statutory construction." *State v. Rick*, 835 N.W.2d 478, 482 (Minn. 2013). A statute is ambiguous if it is susceptible to more than one reasonable interpretation. *Bearder v. State*, 806 N.W.2d 766, 772 (Minn. 2011).

Appellant argues that the statute is ambiguous and that, under the rule of lenity, it must be construed in his favor. *See, e.g., State v. Nelson*, 842 N.W.2d 433, 443 (Minn.

5

2014) (concluding that when a criminal statute was ambiguous and none of the alternative reasonable interpretations was most persuasive, under the rule of lenity, the statute would be construed in favor of the defendant). But this court has previously concluded that Minn. Stat. § 609.341, subd. 15(3), is unambiguous, concluding that two underaged boys' "frequent, but discontinuous stays of two to six days at a time [at a defendant's home] are specifically covered by the statute's use of the term 'intermittently.'" *State v. Sebasky*, 547 N.W.2d 93, 100 (Minn. App. 1996), *review denied* (Minn. June 19, 1996). In *Sebasky*, we noted that "[t]o reside means to 'live, dwell, abide, sojourn, stay, remain, . . . [or] have a settled abode for a time.'" *Id*. (quoting *Black's Law Dictionary* 1308 (6th ed. 1990)). And we defined "intermittently" as meaning "'with intermissions; at intervals.'" *Id*. (quoting *Webster's New Universal Unabridged Dictionary* 959 (2d ed. 1983)).

Appellant argues that, in order to establish residency, a person must have both physical presence in a residence and an intent to settle there, citing cases dealing with the residency requirement for judges, *see In re Conduct of Karasov*, 805 N.W.2d 255 (Minn. 2011), and with the domicile of a person for tax purposes, *see Mauer v. Comm'r of Revenue*, 829 N.W.2d 59, 68 (Minn. 2013). He argues that the term "intermittently" in the context of residency logically refers to a person such as a "snowbird," who resides with intent in Minnesota for a certain period of time, but resides in another location for a different period. He maintains that he had no intent to reside at any time with P.R. and her children, keeping his possessions in another location and only staying there on some evenings.

6

We reject appellant's argument. The statute's plain language provides that a "significant relationship" may be defined in terms of a defendant residing with the complainant on an intermittent basis. Minn. Stat. § 609.343, subd. 1(h)(iii). The statute does not contain an intent requirement or a requirement that the defendant spend every night at a residence with the complainant. *See Sebasky*, 547 N.W.2d at 100. And although appellant testified that he stayed at P.R.'s home three to four times per month, M.S. testified that he was at the townhome "every day" and spent the night "every night." M.S. also stated in the Cornerhouse interview that although appellant had his own home, he "mostly" stayed at her mother's house. "[T]he jury is in the best position to evaluate the credibility of the evidence." *State v. Moore*, 846 N.W.2d 83, 88 (Minn. 2014). On this record, the jury could reasonably have found that appellant "resid[ed] intermittently" with M.S. and determined that the state proved beyond a reasonable doubt that he violated Minn. Stat. § 609.343, subd. 1(h)(iii).

## II

Appellant argues that the evidence does not support his conviction of violating Minn. Stat. § 609.343, subd. 1(a), which requires that the defendant "engage[] in sexual contact" with a complainant under 13 years of age, when the defendant is more than 36 months older than the complainant. *Id*. He maintains that the state failed to prove that he engaged in a specific act of sexual contact, proving only that unspecified acts occurred over several years when M.S. lived in the townhome. But generally, in cases charging criminal sexual conduct based on multiple acts over an extended period of time, specific dates need not be charged or proved. *See State v. Becker*, 351 N.W.2d 923, 927 (Minn.

7

1984) (holding that a defendant may be convicted of sexual abuse if the prosecution proves that the abuse occurred within a reasonable period of time, and specific dates of abuse need not be proven); *State v. Poole*, 489 N.W.2d 537, 544 (Minn. App. 1992), (stating that "specific dates need not be charged or proven in a sexual abuse case"), *aff'd*, 499 N.W.2d 31 (Minn. 1993). "[T]he precise date is an essential element of the crime only where the act done is unlawful during certain seasons, on certain days or at certain hours of the day." *Becker*, 351 N.W.2d at 927.

As in *Becker*, the relevant statute does not require proof that sexual contact occurred on a specific date. *See id*. Although M.S. testified that she did not remember specific dates on which sexual contact occurred, she testified that appellant touched her sexually a number of times when she was between 9 and 12 years old. The jury was instructed that an element of the crime was that appellant engaged in the contact during a period between about August 29, 2003 and August 19, 2007; appellant has not challenged those instructions. Based on the evidence presented, the jury could reasonably infer that appellant engaged in sexual contact with M.S. at least once during that period, and the evidence supports his conviction under Minn. Stat. § 609.343, subd. 1(a).

### III

Appellant argues for the first time on appeal that the prosecutor committed misconduct that deprived him of a fair trial. In reviewing claims of unobjected-to prosecutorial misconduct, we apply a modified plain-error test. *State v. Carridine*, 812 N.W.2d 130, 146 (Minn. 2012) (citing *State v. Ramey*, 721 N.W.2d 294, 302 (Minn. 2006)). To meet this test, appellant must establish that the misconduct amounted to error

8

and that the error was plain. *Id*. An error is plain "if [it] contravenes case law, a rule, or a standard of conduct." *Id*. (quotation omitted). If plain error is established, the state bears the burden to prove that no reasonable likelihood exists that the absence of the misconduct would have significantly affected the jury's verdict. *Ramey*, 721 N.W.2d at 302. "When considering whether an error had a significant effect on the verdict, we consider the strength of the evidence against the defendant, the pervasiveness of the improper suggestions, and whether the defendant had an opportunity to (or made efforts to) rebut the improper suggestions." *State v. Hohenwald*, 815 N.W.2d 823, 835 (Minn. 2012) (quotation omitted). "Finally, if all three prongs . . . are satisfied, the court determines whether to address the error to ensure fairness and integrity in judicial proceedings." *State v. Cao*, 788 N.W.2d 710, 715 (Minn. 2010).

*Eliciting inadmissible testimony*

Appellant argues that the prosecutor committed misconduct by eliciting inflammatory hearsay evidence that C.S. told K.J. that appellant had ejaculated on her, which was deemed inadmissible by the district court. An appellate court "will not hesitate to order a new trial when the state, intentionally or unintentionally, elicits information ruled to be inadmissible and we conclude that information is prejudicial to the defendant." *State v. Flowers*, 734 N.W.2d 239, 260 (Minn. 2007).

Ruling on a defense motion in limine, the district court indicated its concern with possible hearsay statements about information relayed to investigators. The district court noted that there appeared to be "a single disclosure" to K.J. and ruled that it would allow K.J.'s testimony "if there was a statement to [her] that triggered the investigation, and it's

9

consistent with the statements in the Cornerhouse [interview]." But the district court stated that it would "exclude any testimony if she says . . . the girls brought it up again last month or something like that" which would be "getting too far down the line" and negatively affect "credibility and probative value."

In the course of questioning K.J. about her conversation with C.S., the prosecutor asked, "Did the topic of semen come up at all?" K.J. responded that she had asked C.S. "if she knew what semen was," and "if she knew what masturbation was," and that C.S. replied that she did. K.J. then testified that she asked C.S., "then where did that go?", and C.S. stated that it would be "all over her and she'd have to wipe it off." Appellant argues that this testimony violated the district court's limiting order because it was inconsistent with the Cornerhouse interview in which C.S. stated that appellant may have been masturbating when he touched her, but that she did not know what masturbation was.

We conclude that the prosecutor's elicitation of this testimony did not constitute plain error affecting appellant's substantial rights. *See Ramey*, 721 N.W.2d at 302. The district court's ruling generally restricted testimony with respect to any later statements made to K.J., not with respect to statements made during the initial disclosure to her. Therefore, no plain error occurred. And even if the prosecutor had improperly questioned K.J., no reasonable likelihood exists that the absence of the misconduct would have had a significant effect on the jury's verdict. The questionable exchange was brief, and the prosecutor immediately clarified that K.J., not C.S., initially brought up the topic of semen. And because the jury acquitted appellant of charges based on his alleged conduct involving C.S., any inconsistency between C.S.'s disclosure to K.J. and her

10

statements in the Cornerhouse interview would not likely have affected the jury's verdict relating to appellant's conduct against M.S.

*Improper conduct during closing argument*

Appellant argues that the prosecutor committed misconduct during closing argument by improperly vouching for witnesses and arguing based on facts not in evidence. A prosecutor commits misconduct if he or she "implies a guarantee of a witness's truthfulness, refers to facts outside the record, or expresses a personal opinion as to a witness's credibility." *State v. Patterson*, 577 N.W.2d 494, 497 (Minn.1998) (quotation omitted). But a prosecutor has "a right to analyze the evidence and vigorously argue that the state's witnesses were worthy of credibility whereas defendant and his witnesses were not." *State v. Googins*, 255 N.W.2d 805, 806 (Minn. 1977). When analyzing statements made at closing argument, a reviewing court considers "the closing argument as a whole, rather than just selective phrases or remarks that may be taken out of context or given undue prominence." *Carridine*, 812 N.W.2d at 148 (quotation omitted).

Appellant first argues that the prosecutor personally guaranteed the credibility of C.S. and M.S. During closing argument, the prosecutor stated,

> So when they're remembering these acts that occurred, they're remembering them through the eyes of children. And, you know, if you really want to think about who's good at dissembling. Who is really good at not being truthful? Somebody that has a lot more experience, they've lived a longer life. They can say two contradictory things and try to make them sound consistent. There are some adults that are very good about lying. These girls are good kids. But they're not the most sophisticated teenagers. Do you think they're

11

> different? They will come in here and lie about all of this in
> the way that's been suggested.

Appellant argues that these comments amounted to improper vouching because the prosecutor was endorsing the girls' credibility and implying that appellant was not being truthful. But as long as a prosecutor does not intentionally misstate the evidence or mislead the jury as to inferences it may draw, he may argue all reasonable inferences from the evidence in the record. *State v. McCray*, 753 N.W.2d 746, 753–54 (Minn. 2008). Here, the prosecutor's statements that the girls were credible witnesses because they were young did not constitute vouching. *See, e.g., State v. Gail*, 713 N.W.2d 851, 866 (Minn. 2006) (calling a witness "a believable person" and "frank and sincere" was not improper vouching); *State v. Smith*, 825 N.W.2d 131, 139 (Minn. App. 2012) (holding that prosecutor's comments that a witness was "very sincere" and "very frank in his testimony" were not improper vouching because the statements were arguments regarding credibility), *review denied* (Minn. Mar. 19, 2013). And the prosecutor made his comments implying that adults may be less believable witnesses in the context of challenging appellant's credibility based on inconsistencies in his testimony about when he met P.R. and his assertion that during their several-year relationship, he was never alone with M.S. or C.S. Therefore, these comments do not constitute plain error.

Appellant also argues that the prosecutor improperly attempted to bolster the credibility of C.S. and M.S. by informing the jury that they "didn't want to come in here. They didn't want to have to talk about this." But even if made in error, this remark did not affect appellant's substantial rights because it was brief, and the state's case against

appellant was strong, including M.S.'s testimony consistent with her previous statements to K.J. and the Cornerhouse investigator. *See Hohenwald*, 815 N.W.2d at 835.

Finally, appellant argues that the prosecutor argued facts not in evidence when he stated during closing argument that "the children have told you the defendant threatened them, threatened to kill their mother, threatened to hurt their family." "[A] prosecutor should not refer to facts not in evidence." *State v. McArthur*, 730 N.W.2d 44, 53 (Minn. 2007). Appellant is correct that M.S. testified only that appellant would threaten to hurt her mother, not to kill her, and that the girls indicated that appellant did not say he would do anything to harm them if they reported the abuse. Although the prosecutor erred by making this remark, the error was not plain because a threat to "hurt their family" could also refer to a threat to hurt P.R. And it did not affect appellant's substantial rights. The remark was brief, and in closing, defense counsel had the opportunity to rebut the assertion that appellant had threatened their mother by pointing out that M.S. had only mentioned those threats in her testimony, not her previous statements. When viewed as a whole, the prosecutor's closing argument properly focused on assessing the evidence and the inferences to be drawn from it. *See State v. Glaze*, 452 N.W.2d 655, 662 (Minn. 1990) (finding no prejudice to the appellant when remarks were isolated and did not represent the closing argument viewed in its entirety).

Appellant maintains that, even if none of the errors was sufficient to reverse by itself, their cumulative effect justified a new trial. We conclude, however, that any minor errors in this case do not warrant that result. *See, e.g., State v. Davis*, 820 N.W.2d 525, 539 (Minn. 2012) (declining to grant a new trial based on the cumulative impact of

13

various errors, stating that "this case does not resemble the close factual cases in which we have ordered new trials for cumulative errors" and that the errors, taken together, were not "'enough to tip the scales' toward producing a biased jury") (quotation omitted).

**Affirmed.**