**Donald Edward PERKINS,
Petitioner, Appellant,**

v.

**STATE of Minnesota, Respondent.**

**No. CX–95–1399.**

Court of Appeals of Minnesota.

Decided Dec. 26, 1995.

John M. Stuart, State Public Defender, Cathryn Y. Middlebrook, Assistant Public Defender, Minneapolis, for Donald Edward Perkins.

Hubert H. Humphrey III, Attorney General, Catherine M. Keane, Assistant Attorney General, St. Paul, Douglas L. Ruth, Steele County Attorney, Owatonna, for the State.

Considered and decided by WILLIS, P.J., and HUSPENI and SCHUMACHER, JJ.

## OPINION

SCHUMACHER, Judge.

Donald Edward Perkins appeals the post-conviction court's decision that (1) he failed to prove he mistakenly believed he could withdraw his guilty plea if the trial court rejected the sentencing recommendations, and (2) the trial court did not abuse its discretion by departing from the guidelines and sentencing him to the statutory maximum, and imposing a $12,000 fine. We affirm in part, reverse in part, and remand.

## FACTS

On September 3, 1993, Perkins met A.L. in a bar. A.L. gave Perkins a ride to his hotel, and helped him carry beer up to his room. In the room, Perkins told A.L. to stand up, grabbed her by the throat, and told her not to scream. He repeatedly said that he was going to kill her, and that she was not the first one he had killed. Perkins told A.L. to remove her shorts, but she refused. He demanded that A.L. cooperate, removed her shorts, and pushed her onto the bed. A.L. tried to scream, but Perkins tightened his grip on her throat and put his other hand over her mouth. Perkins then straddled A.L. and began removing his clothing. A.L. again tried to scream, but Perkins hit her with the back of his hand and covered her mouth. He then had sexual intercourse with her.

After Perkins was finished, he tried to strangle A.L. They struggled and A.L. ended up on the floor. Perkins pulled her up, pushed her against the bed and told her to take off all of her rings. She complied with his demand. Perkins put a pillow over her face and said he should kill her. He then ordered her to remove her bra and used it to tie her hands and ankles behind her back. Perkins told A.L. to be quiet, otherwise he would come back and kill her and her children.

Perkins took A.L.'s car. A state trooper spotted the car, and followed it into a roadside rest area. Perkins fled on foot. He was arrested September 28, 1993, in Nebraska.

Perkins was charged with first- and second-degree criminal sexual conduct, fifth-degree assault, aggravated robbery, kidnapping, terroristic threats, and auto theft. Perkins entered a *Goulette*-type guilty plea to one count of first-degree criminal sexual conduct, and the state dismissed the remaining charges. Perkins and the state agreed to recommend that the court sentence him to the presumptive term under the sentencing guidelines. Based on a severity level of eight and a criminal history score of two, the guidelines called for a sentence of 105 to 115 months.

The trial court, citing a number of aggravating factors, imposed a 30-year sentence, the statutory maximum. The court also ordered Perkins to pay a $12,000 fine. Perkins filed a petition for postconviction relief in which he sought to withdraw his guilty plea or, alternatively, reduce his sentence to the presumptive term. Following a hearing, the postconviction court denied Perkins' petition. The court concluded that Perkins did not establish that he mistakenly believed he could withdraw his guilty plea if the sentencing judge rejected the sentencing recommendation, and that the sentencing court did not abuse its discretion by sentencing Perkins to the statutory maximum and imposing a $12,000 fine.

## ISSUES

1. Did the postconviction court abuse its discretion by denying Perkins' request to withdraw his guilty plea?

2. Did the postconviction court abuse its discretion by affirming the trial court's imposition of the statutory maximum of 30 years in prison?

3. Did the postconviction court abuse its discretion by affirming the trial court's imposition of a $12,000 fine?

## ANALYSIS

In reviewing a postconviction proceeding, we ask only whether there is sufficient evidence to sustain the postconviction court's findings. *Miller v. State*, 531 N.W.2d 491, 492 (Minn.1995). Absent an abuse of discretion, a postconviction court's decision will not be disturbed. *Id.*

1. In order to be valid, a guilty plea must be accurate, voluntary, and intelligent. *State v. Ecker*, 524 N.W.2d 712, 716 (Minn.1994). Once a guilty plea has been entered, there is no absolute right to withdraw it. *Shorter v. State*, 511 N.W.2d 743, 746 (Minn.1994). But a court shall allow a defendant to withdraw a guilty plea after sentencing "to correct a manifest injustice." Minn.R.Crim.P. 15.05, subd. 1; *see also Kim v. State*, 434 N.W.2d 263, 266 (Minn.1989) (discussing rule 15.05).

Perkins argues the postconviction court abused its discretion by refusing to

allow him to withdraw his guilty plea. He contends the plea was not knowingly, voluntarily, or intelligently made because he did not understand the distinction between a plea recommendation and a plea agreement. The difference between the two has been summarized by the supreme court:

[I]f the trial court rejects an *agreement* as to sentence, the defendant is entitled to withdraw his plea. On the other hand, if the trial court rejects a *recommendation* made pursuant to an agreement, the defendant is not entitled to withdraw the plea unless he can establish either (a) that * * * he mistakenly believed that he could withdraw his plea if the trial court rejected the prosecutor's recommendation or (b) that there is some other ground for withdrawal.

*State v. DeZeler*, 427 N.W.2d 231, 234 (Minn. 1988). Perkins testified at the postconviction hearing that because of his mistaken belief, he thought he agreed to "110 to 115 months in exchange for a guilty plea." There is sufficient evidence in the record, however, to support the postconviction court's conclusion. First, Perkins signed the plea petition, which stated that a recommendation is not binding on the court. Paragraph 20 of the petition states that Perkins was told by an attorney and understood:

b. That the plea agreement with the prosecuting attorney as to crime charge is a *condition* of my entering my plea of guilty herein; if the reduction in the crime charge is not accepted I can withdraw my plea of guilty absolutely.

c. However, anything in the plea agreement as to sentence (or disposition) by the judge is not a *condition* of my entering my plea of guilty herein; it would merely be a *recommendation* not binding upon the judge who sentences me (or makes any disposition) upon my plea of guilty today. Therefore I cannot withdraw my plea of guilty if the sentencing judge disregards the prosecuting attorney's recommendation on sentence.

Second, Perkins' attorney testified that he reviewed the plea petition with Perkins and explained the difference between a plea agreement and a plea recommendation.

Third, the sentencing court questioned Perkins about his understanding of the recommendation:

THE COURT: * * * Mr. Perkins, I'd ask you at this time as well, do you understand the recommendations of Mr. Riha and Mr. Floerke with regard to sentencing on this plea are just that, they're recommendations to the Court, the Court remains—I remain free to determine what the sentence would actually be, do you understand?

A. Yes.

We reject Perkins' argument that the plea petition is invalid because it does not comply with the Minnesota Rules of Criminal Procedure and the Rule 15 petition forms. We note that language in Minn.R.Crim.P. 15.09 requiring a written plea petition to "be in the appropriate form as set forth in" the appendices to the rule only applies to actions commenced or arrests made on or after July 1, 1994, and cannot apply here. *See* Promulgation of Amendments to the Rules of Criminal Procedure, No. C1–84–2137 (Minn. May 9, 1994) (order amending criminal procedure rules), *reprinted in* Minnesota Rules of Court 139–40 (West 1995). In any event, the petition in no way conflicts with the rules.

Perkins argues that his plea was not knowingly and intelligently made because he did not understand he was facing a statutory maximum 30–year sentence. The plea petition, however, stated "[t]hat the maximum penalty that the court could impose for this crime * * * is imprisonment for 30 years." Moreover, at the plea hearing, Perkins' lawyer asked Perkins if he understood that the crime with which he was charged "carries a maximum punishment of 30 years in prison or a $40,000 fine or both." Perkins testified that he understood.

■ Perkins contends his decision to plead guilty was affected by the fact that he was not receiving appropriate medical care at the county jail. The record does not support this contention, and in fact shows that he was admitted to a hospital when necessary.

2. Perkins argues the postconviction court abused its discretion by affirming the trial court's imposition of the statutory maxi-

mum 30–year sentence, a greater-than-triple durational departure. We disagree.

A court may depart from the presumptive sentence under the guidelines when the offense involves "substantial and compelling circumstances." Minn. Sent. Guidelines II.D; *State v. Garcia*, 302 N.W.2d 643, 647 (Minn.1981). The trial court has wide discretion in sentencing matters and an appellate court generally will not interfere with that discretion unless it has a "strong feeling" that the sentence is disproportionate to the offense. *State v. Schenk*, 427 N.W.2d 12, 13 (Minn.App.1988).

Under the guidelines, a departure is justified where the victim is treated with particular cruelty. Minn. Sent. Guidelines II.D.2.b.(2). The sentencing court found particular cruelty because Perkins was infected with the AIDS virus, threatened A.L. with death, choked A.L. to the point of unconsciousness, suffocated A.L. with a pillow, and threatened to kill A.L.'s children. The court said:

> I cannot fathom on the face of this earth * * * a more devastating offense to a victim than being sexually assaulted by a person with AIDS * * *. The victim of this offense will not know for several months whether or not she contracted the HIV virus. * * * If she does become HIV-positive, it's a death sentence.

It is clear from the record that Perkins knew he had AIDS when he committed the offense.

A greater-than-double durational departure is justified only in extremely rare cases where the aggravating circumstances are severe. *State v. Glaraton*, 425 N.W.2d 831, 834 (Minn.1988); *State v. Van Gorden*, 326 N.W.2d 633, 635 (Minn.1982). Determining whether severe aggravating circumstances exist is a decision which "must be based on our collective, collegial experience in reviewing a large number of criminal appeals." *State v. Norton*, 328 N.W.2d 142, 146 (Minn.1982). We agree that this is a rare case; the fact that Perkins had AIDS is a severe factor that, coupled with the gratuitous acts of cruelty, warrant the greater-than-triple departure. *See State v. Cermak*, 344 N.W.2d 833, 840 (Minn.1984) (threats "to break every bone" in victim's body constitute particularly cruel conduct); *State v. Schantzen*, 308 N.W.2d 484, 487 (Minn.1981) (gratuitous infliction of pain qualifies as particular cruelty); *State v. Hines*, 343 N.W.2d 869, 872–73 (Minn.App.1984) (upward departure proper where threats made to robbery victim were purely gratuitous and psychologically brutal).

3. Perkins argues the postconviction court abused its discretion by affirming the trial court's imposition of a $12,000 fine. We agree.

A trial court must make a finding that the defendant is able to pay a fine. *State v. Martinson*, 460 N.W.2d 342, 344 (Minn.App.1990), *review denied* (Minn. Oct. 25, 1990). In *State v. Patterson*, 511 N.W.2d 476 (Minn.App.1994), *review denied* (Minn. Mar. 31, 1994), this court held that such a finding is only required if a court reduces the amount of a minimum fine. *Id.* at 479. We conclude that a finding is also required if a court imposes a fine greater than the minimum. The mandatory minimum fine for first-degree criminal sexual conduct is $500. Minn.Stat. § 609.101, subd. 2 (1994). *Cf. id.*, subd. 4 (1994) (mandatory minimum fine for other felonies not listed in subdivision 2 is 30% of maximum fine authorized by law). We remand so that the court may make this finding or alter the fine.

## DECISION

There is evidence to support the postconviction court's conclusion that Perkins' guilty plea was knowingly and intelligently made. The durational departure was warranted, but the sentencing court was required to make a finding that he was able to pay the fine.

**Affirmed in part, reversed in part, and remanded.**