STATE of Minnesota, Respondent,

v.

Kevin Felipe SEBASKY, Appellant.

No. C4–95–1267.

Court of Appeals of Minnesota.

April 23, 1996.

Review Denied June 19, 1996.

---

94

John M. Stuart, State Public Defender, Marie L. Wolf, Asst. Public Defender, Scott Korzenowski, Certified Student Atty., Minneapolis, for appellant.

Hubert H. Humphrey, III, Attorney General, St. Paul, Susan E. Gaertner, Ramsey County Attorney, Darrell C. Hill, Asst. County Attorney, St. Paul, for respondent.

Considered and decided by NORTON, Presiding Judge, KALITOWSKI, Judge, and SHORT, Judge.

## OPINION

SHORT, Judge.

A jury convicted Kevin Felipe Sebasky of one count of criminal sexual conduct in the first degree in violation of Minn.Stat.

§ 609.342, subd. 1(a) (complainant under 13 years of age and actor more than 36 months older than complainant), and two counts of criminal sexual conduct in the first degree in violation of Minn.Stat. § 609.342, subd. 1(g) (complainant under 16 years of age and actor has a significant relationship to complainant). On appeal from a judgment of conviction, Sebasky argues: (1) the trial court abused its discretion by admitting evidence of prior bad acts and sexual beliefs; (2) the evidence is insufficient as a matter of law to support conviction under Minn.Stat. § 609.342, subd. 1(g); and (3) the trial court abused its discretion by imposing prison terms greater than the presumptive sentences for two convictions.

### FACTS

Sebasky was the general manager of a St. Paul restaurant, where he met J.W., the 10–year–old son of a waitress. J.W. (d.o.b. October 22, 1979) came around the restaurant with his mother, and Sebasky gave him odd jobs. When Sebasky left the restaurant to start his own painting business, he employed J.W., then a fifth grader, on weekends to mix paint and carry supplies in exchange for $50 a weekend. With his mother's consent, J.W. stayed overnight at Sebasky's apartment because Sebasky's business necessitated early morning starts.

During 1991–92, the overnight visits occurred almost every weekend. J.W. wore only boxer shorts at night and slept in the same bed with Sebasky. J.W. testified that Sebasky: (1) fondled J.W.'s penis when Sebasky thought J.W. was sleeping; (2) performed fellatio on J.W. until J.W. ejaculated; (3) digitally penetrated J.W.'s bottom; (4) fondled himself; (5) showed J.W. videos depicting gay men having sex and young boys running naked on a beach; (6) took nude pictures of J.W.; and (7) provided J.W. with unsolicited gifts of clothes, tapes, a remote control truck, two credit cards, and an all-expense-paid trip to Florida in 1992.

D.G. (d.o.b. May 13, 1979), started working for Sebasky in 1993. D.G. was also hired to mix paint and carry supplies in exchange for $50 a weekend. With his mother's permission, D.G. stayed over at Sebasky's house 70–80% of the time when he was working for Sebasky and as many as 6 nights per week during the summer. D.G. kept clothes at Sebasky's house.

D.G. testified that Sebasky: (1) stroked D.G.'s penis while the boy pretended to be asleep; (2) performed fellatio on D.G. until the boy ejaculated on 3 or 4 occasions; (3) took nude pictures of D.G.; (4) showed D.G. pornographic movies of gay men; and (5) provided D.G. with several gifts, including a used television set. D.G. also testified he saw several North American Man/Boy Love Association (NAMBLA) bulletins and magazines depicting nude men or boys around Sebasky's apartment.

After the police interviewed J.W. in 1994, the officers executed a search warrant at Sebasky's apartment. The officers seized numerous photos of J.W., several photographs of D.G., videotapes, lubricants, a dildo, several NAMBLA bulletins and magazines containing photographs of nude males.

At trial, Sebasky denied engaging in any form of sexual activity with either boy. He admitted: (1) he is gay; (2) both boys worked for him as a painter's assistant; (3) both boys stayed overnight at his apartment and slept in his bed; (4) he showed pornographic videos to both boys; (5) he provided J.W. many gifts, including credit cards, a Florida trip, and airplane tickets; and (6) he subscribed to the NAMBLA bulletin for reasons of "curiosity."

At trial, the court admitted 25 NAMBLA bulletins over the defense's objection. The prosecutor read to the jury the following statement from one of these magazines:

> The North American Man/Boy Love Association is both political and educational. We work to organize support for boys and men who have or desire consensual sexual and emotional relationships and to educate society on their positive nature.

The trial court also permitted the state to introduce evidence of Sebasky's prior misconduct through the testimony of M.B., who claimed to have had a sexual relationship with Sebasky in 1981, when M.B. was about 14 years old. The two met when M.B.'s mother worked for Sebasky at a restaurant.

Sebasky gave M.B. odd jobs around the restaurant and eventually they engaged in social activities together. M.B. stayed at Sebasky's home anywhere from two days to a whole week at a time. On these overnight visits, M.B. slept in the same bed with Sebasky. At night, Sebasky performed fellatio on M.B. and attempted anal sex. M.B. testified the sexual misconduct occurred several hundred times. During the first six or seven months of abuse, M.B. continued working for Sebasky at the restaurant. Sebasky also gave M.B. many gifts, including clothes and a year's tuition at a parochial school.

Sebasky was convicted of three counts of first-degree criminal sexual conduct. The trial court sentenced Sebasky to 258 months for violating Minn.Stat. § 609.342, subd. 1(a) (representing a triple upward departure from the presumptive sentence), to 172 months for his first violation of Minn.Stat. § 609.32, subd. 1(g) (representing a 62–month upward departure from the presumptive sentence), and to a consecutive sentence of 86 months for his second violation of Minn.Stat. § 609.342, subd. 1(g).

## ISSUES

I. Did the trial court abuse its discretion by admitting into evidence the testimony of M.B. and the NAMBLA bulletins?

II. Is the evidence insufficient as a matter of law to support Sebasky's convictions for criminal sexual conduct in the first degree in violation of Minn.Stat. § 609.342, subd. 1(g), which requires a "substantial relationship" between the offender and the complainant?

III. Did the trial court abuse its discretion by sentencing Sebasky to a triple upward departure for his conviction under Minn.Stat. § 609.342, subd. 1(a), and a 62–month upward departure for his first conviction under Minn.Stat. § 609.342, subd. 1(g)?

## ANALYSIS

### I.

■ Decisions regarding the admission of evidence rest within the sound discretion of the trial court and will not be reversed absent an abuse of discretion. *State v. Naylor,* 474 N.W.2d 314, 317 (Minn.1991). A defendant claiming error in the trial court's evidentiary rulings must show a reasonable possibility the error substantially influenced the jury to convict. *State v. Loebach,* 310 N.W.2d 58, 64 (Minn.1981).

#### a. *Testimony Concerning Prior Bad Acts*

■ *Spreigl* evidence, or evidence of prior bad acts, is admissible to show intent, preparation, or plan when the state's case is inadequate without the evidence. Minn. R.Evid. 404(b) (admissible purposes); *see State v. Stagg,* 342 N.W.2d 124, 127 (Minn. 1984) (direct and circumstantial evidence on the issue must be weak or inadequate). The evidence must be: (1) relevant and material to the state's case; (2) clear and convincing; and (3) more probative than its potential for unfair prejudice. *State v. Filippi,* 335 N.W.2d 739, 743 (Minn.1983).

■ Sebasky argues M.B.'s testimony that Sebasky sexually abused M.B. numerous times after 1981 is not relevant because the events described are insufficiently similar to the current allegations. *See id.* (determining relevancy based on the prior bad act's similarity to the charged offense); *State v. Buhl,* 520 N.W.2d 177, 181 (Minn.App.1994) (same), *review denied* (Minn. Oct. 27, 1994). In determining relevance and materiality, the trial court should consider the relation in time, place, or modus operandi between the charged offense and the other crime. *Filippi,* 335 N.W.2d at 743. The crimes do not have to be identical. *State v. DeWald,* 464 N.W.2d 500, 503 (Minn.1991); *see also State v. Crocker,* 409 N.W.2d 840, 843 (Minn.1987) (holding a conviction for lewd conduct with a seven-year-old was sufficient, when presented with evidence of other sexual misconduct, to establish a pattern of sexual misconduct with vulnerable young women); *Buhl,* 520 N.W.2d at 181 (stating the similarities "need not be great").

■ The charged crimes and M.B.'s testimony exhibit many similarities. First, all victims were boys who worked for Sebasky and eventually began living with him for a few days at a time. Second, Sebasky waited

until the victims were spending the night in his bed before committing the sexual misconduct. Third, Sebasky's misconduct was never confined to a single incident; he repeatedly abused each boy over a lengthy period. And fourth, Sebasky gave his victims many gifts during the time he abused them. Under these circumstances, the trial court did not abuse its discretion in determining M.B.'s testimony was relevant to the state's case. While 10 or 12 years elapsed between the *Spreigl* acts and the charged crimes, a close temporal relationship is not necessary if the evidence is otherwise relevant. *See State v. Wermerskirchen*, 497 N.W.2d 235, 242 & n. 3 (Minn.1993) (stating the ultimate issue is relevance and affirming the trial court's admission of *Spreigl* evidence based on the similarity of the illegal acts, the location in which the acts took place, and the young age of the victims).

■ Sebasky also argues the evidence from M.B. was not clear and convincing. However, the identity of the perpetrator was not at issue and the defense did not attempt to rebut M.B.'s testimony. *See State v. Moorman*, 505 N.W.2d 593, 602 (Minn.1993) (stating *Spreigl* evidence was proven by clear and convincing evidence because the defendant's identity was not in doubt and the victim testified about the incident); *State v. Rainer*, 411 N.W.2d 490, 497 (Minn.1987) (finding *Spreigl* incidents were proven by clear and convincing evidence because there was eyewitness testimony, no rebuttal, and the identity of the participants was not in doubt). Sebasky's current assertions that M.B. may have had some unspecified reasons for fabricating the incidents fails to show by itself that the evidence was not clear and convincing. *Cf. State v. Coleman*, 373 N.W.2d 777, 781–82 (Minn.1985) (upholding the trial court's admission of other crime evidence despite some uncertainty in the witnesses' identification of the defendant).

■ Sebasky further argues the evidence's potential for unfair prejudice outweighs its probative value. The record demonstrates: (1) the state's case rested solely on two teenage complainants' testimony of abuse; (2) Sebasky vigorously denied any misconduct; (3) the trial court found the other crime was

sufficiently relevant to the charged offense; (4) the trial court gave a cautionary instruction at the time the evidence was received and again during final jury instructions; and (5) during final argument, the prosecutor stressed the limited purpose of the *Spreigl* evidence. Under these circumstances, the *Spreigl* evidence is relevant and its probative value outweighs its potential for prejudice. *See Wermerskirchen*, 497 N.W.2d at 241–42 (affirming the admission of *Spreigl* evidence in a criminal sexual conduct case and finding it was highly relevant to the issue of whether the conduct occurred because the defendant denied the misconduct and the trial court found the other crime was sufficiently relevant to the charged crime); *State v. Frisinger*, 484 N.W.2d 27, 31 (Minn.1992) (stating that a closer relationship between the *Spreigl* evidence and the charged crime shows a greater probative value and a lesser likelihood that the evidence will be used improperly); *see also State v. Bolte*, 530 N.W.2d 191, 196–97 (Minn.1995) (requiring certain procedural safeguards, including a cautionary instruction upon receipt of the evidence and as part of the final instructions).

In addition, the defense had ample notice that the state would seek admission of this evidence; five or six weeks before trial, the state submitted a supplemental disclosure naming M.B. as a prospective witness and counsel argued the matter several times before the trial court ruled on its admissibility. *See State v. Doughman*, 384 N.W.2d 450, 456 (Minn.1986) ("The notice procedure [required for *Spreigl* evidence] serves to guard against the injustice of using evidence against an accused who is unprepared to demonstrate that such evidence is unsubstantiated."). Also, the trial court appropriately delayed admission of the evidence until it confirmed necessity based on the entire case. Under these circumstances, the trial court did not abuse its discretion by admitting M.B.'s testimony regarding Sebasky's bad acts.

### b. *NAMBLA Bulletins*

■ At trial, D.G. stated he saw NAMBLA bulletins in Sebasky's apartment. Admission of the magazines merely corroborated this testimony. *See State v. Wiskow*, 501

N.W.2d 657, 660 (Minn.App.1993) (approving the introduction of an adult magazine on these grounds). However, the trial court allowed the prosecutor to read the association's statement of purpose, ruling the evidence tended to show Sebasky's intent and state of mind. It is undisputed neither complainant knew anything about the bulletins' content. Given these facts, the challenged evidence tends not to corroborate witness testimony, but only to suggest improperly that Sebasky acted in conformity with his beliefs about relationships between men and boys. *See* Minn.R.Evid. 404(a) (requiring evidence of a person's character show more than "conformity therewith on a particular occasion"); *State v. Miggler,* 419 N.W.2d 81, 85 (Minn.App.1988) (stating magazines containing child pornography, the admission of which would not corroborate any of the complainant's testimony, could not be admitted to show the defendant's propensity to sexually abuse children); *People v. Bagarozy,* 132 A.D.2d 225, 522 N.Y.S.2d 848, 855 (1987) (holding the admission of NAMBLA affiliation was error because its only purpose was to demonstrate the defendant's sexual tendencies); *see also State v. Harris,* 521 N.W.2d 348, 353 (Minn.1994) (finding evidence that the defendant masturbated while he looked at a picture of the victim was not relevant and, to establish that the defendant knew the victim, the jury could simply have been informed that he had the picture).

While Sebasky has demonstrated the trial court abused its discretion in allowing the state to go beyond mere corroboration, Sebasky has not shown resulting prejudice. *See Loebach,* 310 N.W.2d at 64 (reversing a conviction only if the error substantially influenced the jury to convict). The prosecution introduced other sexually-related evidence found in Sebasky's apartment, including dildos, creams, condoms, several gay-oriented magazines (at least one of which contained pictures of nude men and boys), and four videos of either male homosexuals engaged in sexual activity or young boys running naked on beaches. This evidence, combined with the testimony of the two complainants and M.B., establishes no reasonable likelihood that the presentation of NAMBLA's statement of purpose substantially influenced the jury to convict.

## II.

When reviewing a claim that the evidence is insufficient to support a conviction, we must determine whether the evidence, viewed in a light most favorable to the conviction, reasonably supports it. *State v. Webb,* 440 N.W.2d 426, 430 (Minn.1989). However, statutory interpretation presents a question of law, which we review de novo. *Hibbing Educ. Ass'n v. Public Employment Relations Bd.,* 369 N.W.2d 527, 529 (Minn. 1985); *State v. Knutson,* 523 N.W.2d 909, 912 (Minn.App.1994), *review denied* (Minn. Jan. 13, 1995). The objective of statutory interpretation is to effectuate the intention of the legislature. *State ex rel. Graham v. Klumpp,* 536 N.W.2d 613, 615 (Minn.1995).

Words of a statute generally should be given their ordinary meaning. Minn.Stat. § 645.08(1) (1994); *Burns v. Alcala,* 420 U.S. 575, 580–81, 95 S.Ct. 1180, 1184–85, 43 L.Ed.2d 469 (1975); *State v. Moore,* 431 N.W.2d 565, 568 (Minn.App.1988). If a statute is clear and unambiguous, the language determines its meaning. Minn.Stat. § 645.16 (1994). Thus, in the absence of ambiguous language, we may not consider legislative history or intent except as it is embodied in the statute's terms. *See Phelps v. Commonwealth Land Title Ins. Co.,* 537 N.W.2d 271, 274 (Minn.1995) (refusing to consider legislative history when the legislature's intent is clearly manifested by unambiguous language); *State v. Carpenter,* 459 N.W.2d 121, 126 (Minn.1990) (giving effect to the plain meaning of a statute when its language is clear and unambiguous); *W.H. Barber Co. v. City of Minneapolis,* 227 Minn. 77, 84, 34 N.W.2d 710, 714 (1948) (quoting *State ex rel. City of St. Paul v. Oehler,* 218 Minn. 290, 296, 16 N.W.2d 765, 768 (1944) (quoting *Oppegaard v. Board of Comm'rs,* 120 Minn. 443, 447, 139 N.W. 949, 950 (1913)) and stating "literal enforcement" is required when the language has a definite meaning and is not absurd or contradictory).

To convict a defendant of criminal sexual conduct in the first degree under

Minn.Stat. § 609.342, subd. 1(g) (1992, 1994) (definition unchanged in current statute), the state must prove the defendant has a "significant relationship" to the complainant. Sebasky argues the evidence is insufficient to support his two convictions under Minn.Stat. § 609.342, subd. 1(g) because he did not share a significant relationship with either complainant.

A "significant relationship" includes the situation of

an adult who jointly resides intermittently or regularly in the same dwelling as the complainant and who is not the complainant's spouse.

Minn.Stat. § 609.341, subd. 15(3) (1992) (definition unchanged in current statute). To reside means to "live, dwell, abide, sojourn, stay, remain, lodge * * * [or] have a settled abode for a time." Black's Law Dictionary 1308 (6th ed. 1990). A dwelling is any "place of residence." Webster's New Universal Unabridged Dictionary 567 (2d ed. 1983). When given their ordinary meanings, the statute's terms are clear, free from multiple interpretations, and easily applicable to the current relations. *See Phelps*, 537 N.W.2d at 274 (indicating a statute is unambiguous when it is not susceptible to more than one reasonable interpretation).

The complainants stayed at Sebasky's apartment while he lived there. The boys slept, ate, occasionally left personal items there, and apparently never returned to their own homes during these stays. The statute is unambiguous and makes no requirement that the actor live in the *complainant's* house, as Sebasky suggests, but merely that the two reside in the *same* place. Thus, we may not substitute Sebasky's proposed interpretation based on legislative history, but must effectuate the legislature's intent expressed in its clear choice of words. *See Phelps*, 537 N.W.2d at 274 (refusing to consider legislative history when the legislature's intent is clearly manifested by unambiguous language); *Carpenter*, 459 N.W.2d at 126 (giving effect to the plain meaning of a statute when its language is clear and unambiguous).

We conclude the boys' living arrangements at Sebasky's apartment fall within the purview of the statute. The complainants' frequent, but discontinuous, stays of two to six days at a time are specifically covered by the statute's use of the term "intermittently." *See* Webster's New Universal Unabridged Dictionary 959 (2d ed. 1983) (defining intermittently as "with intermissions; at intervals"). Sebasky cannot escape the relationship of trust he created when he offered the boys a place to live over an extended period of time. The evidence was sufficient to show Sebasky had a significant relationship to each of the boys and, thus, to support his convictions under Minn.Stat. § 609.342, subd. 1(g).

### III.

 A trial court has broad discretion in sentencing, and we will not reverse a sentence absent a clear abuse of discretion. *State v. Garcia*, 302 N.W.2d 643, 647 (Minn. 1981). Unless substantial and compelling circumstances are present, the trial court must impose the presumptive sentence under the Minnesota Sentencing Guidelines. *Id.* (quoting Minn.Sent.Guidelines II.D). An upward departure requires that the defendant's conduct be significantly more serious than that typically involved in the commission of the particular offense. *State v. Cox*, 343 N.W.2d 641, 643 (Minn.1984). While courts usually should restrict sentences to double departures, when severe aggravating factors are present the only limit is the maximum sentence provided by the legislature. *State v. Evans*, 311 N.W.2d 481, 483 (Minn.1981) (crimes generally warrant only double departures); *see also State v. Mortland*, 399 N.W.2d 92, 94 n. 1 (Minn.1987) (maximum sentence is that proscribed by law). We examine the record to determine whether it supports the trial court's stated reasons for a departure. *Williams v. State*, 361 N.W.2d 840, 844 (Minn.1985). If the trial court relied partly on improper considerations, we will affirm a sentence if it is justified by sufficient aggravating factors. *Id.*

 In departing from the presumptive sentences for Sebasky's conviction under Minn.Stat. § 609.342, subd. 1(a) (Supp.1990) (definition unchanged in current statute) and his first conviction under Minn.Stat.

§ 609.342, subd. 1(g), the trial court relied on numerous valid aggravating factors, including the multiple incidents and multiple types of abuse, Sebasky's planning and manipulation, his knowledge that he was HIV positive at the time of the incidents, and the violation of his position of trust and authority. *See Kilcoyne v. State,* 344 N.W.2d 394, 397 (Minn.1984) (affirming an upward departure and noting the multiple types of penetration and ongoing nature of the abuse); *State v. Kindem,* 338 N.W.2d 9, 17–18 (Minn. 1983) (citing planning as an appropriate aggravating factor justifying a departure), *cert. denied,* 466 U.S. 974, 104 S.Ct. 2352, 80 L.Ed.2d 825 (1984); *Perkins v. State,* 540 N.W.2d 908, 912 (Minn.App.1995) (affirming a greater-than-triple departure based in part on the defendant's knowledge of his infection with the AIDS virus), *review granted* (Minn. Feb. 27, 1996); *State v. Griffith,* 480 N.W.2d 347, 351 (Minn.App.1992) (finding the defendant's abuse of the trust that the teenage complainant placed in him when she decided to move in with his family was a valid aggravating factor), *review denied* (Minn. Mar. 19, 1992); *see also State v. Mesich,* 396 N.W.2d 46, 52 (Minn.App.1986) ("Multiple penetrations alone will generally justify a double * * * departure."), *review denied* (Minn. Jan. 2, 1987). The record supports these considerations and the multitude of aggravating factors shows Sebasky's conduct was particularly egregious, thus warranting the triple departure imposed for his violation of Minn.Stat. § 609.342, subd. 1(a).

In making a violation of Minn. Stat. § 609.342, subd. 1(g) criminal sexual conduct in the *first* degree, the legislature required the existence of a special relationship to support the seriousness of this offense. *See State v. Peterson,* 329 N.W.2d 58, 60 (Minn.1983) (noting the defendant's position of authority was apparently a basis for the severity of the offense and for convicting him of criminal sexual conduct in the first degree rather than in the third or fourth degree). *Compare* Minn.Stat. § 609.342, subd. 1(g) (requiring a significant relationship between the defendant and complainant to convict someone of criminal sexual conduct in the first degree) *with* Minn.Stat. § 609.344, subd. 1(b) (1994) (requiring no relationship for the otherwise similar offense of criminal sexual conduct in the third degree). A trial court may not depart from the presumptive sentence based on a factor that is also an element of the offense. *State v. Ahern,* 349 N.W.2d 838, 841 (Minn.App.1984); *see also Peterson,* 329 N.W.2d at 60 (stating the defendant's position of authority was not a valid departure ground for an offense that requires the actor to be in a position of authority). Sebasky argues the trial court improperly cited the violation of a position of trust or authority when sentencing him under Minn.Stat. § 609.342, subd. 1(g). While we agree, the other aggravating circumstances adequately support the 62–month sentencing departure for Sebasky's first conviction under Minn.Stat. § 609.342, subd. 1(g).

## DECISION

First, the trial court did not abuse its discretion by admitting evidence of prior bad acts and evidence tending to corroborate a complainant's testimony. Although the trial court abused its discretion by allowing the introduction of improper character evidence, there is no reasonable likelihood that the evidence substantially influenced the jury to convict given the overwhelming evidence against him suggests it was also impermissible character evidence. Second, the statutory language defining a "substantial relationship" is unambiguous, applies to Sebasky's association with the complainants, and supports conviction under Minn.Stat. § 609.342, subd. 1(g). And third, there are numerous aggravating factors to support the sentencing departure, despite the inapplicability of an abuse of trust or authority for convictions under Minn.Stat. § 609.342, subd. 1(g).

**Affirmed.**