**Richard S. CUMMINGS, Appellant,**

v.

**Charles E. KOEHNEN, et al., Respondents.**

**No. C6–96–1118.**

Court of Appeals of Minnesota.

Dec. 17, 1996.

Review Granted Feb. 26, 1997.

M. Kevin Snell, Minneapolis, for Appellant.

Kristen Paulson Gibbons, Hessian, McKasy & Soderberg, P.A., Minneapolis, for Respondent.

Hubert H. Humphrey III, Attorney General, Erica Jacobson, Assistant Attorney General, for Amicus Curiae Minnesota Department of Human Rights.

Considered and decided by WILLIS, P.J., and LANSING and KALITOWSKI, JJ.

## OPINION

KALITOWSKI, Judge.

Richard Cummings appeals from a final partial judgment dismissing his claim of sexual harassment against respondents Charles Koehnen and S & K Trucking and Landscaping. Cummings argues the district court erred in concluding he did not establish a prima facie claim for sexual harassment under the Minnesota Human Rights Act.

## FACTS

Appellant Richard Cummings was hired as a truck driver by respondent S & K Trucking and Landscaping (S & K) in July of 1992. Respondent Charles Koehnen is the vice president of S & K and responsible for the day-to-day operations, including dispatching and supervising the company's truck drivers.

The alleged incidents of sexual harassment occurred between September 1, 1993, and November 1, 1993, at the beginning or end of the workday when numerous people would socialize in S & K's shop. The conversations that occurred during these times often included vulgar and sexually orientated language. Cummings alleges the following specific incidents of sexual harassment:

1) On September 1, 1993, while sitting at a shop desk, Koehnen came into the office, straddled Cummings knee and pulled Cummings head toward his crotch.

2) On September 3, 1993, Koehnen grabbed Cummings by the hips as he came out of the bathroom and said, "Here, let me show you how a real man takes it."

3) On September 23, 1993, Koehnen, while Cummings was bending over, said, "Oh, he's ready for me," and then put a hammer up to Cummings' crotch from behind.

4) On October 5, 1993, and numerous other occasions, Koehnen said to Cummings, "How about sucking my little dick and make it a big dick before you go out to make me money."

5) On October 8, 1993, Koehnen threw Cummings' paycheck on the floor and told Cummings to bend over so that he could "slip it to me like a man."

6) On November 1, 1993, Koehnen pinched Cummings leg just under his buttocks.

Cummings claims that after each incident he told Koehnen to stop such actions. S & K's policy on sexual harassment consists of a one-sentence statement that directs employees to speak with the vice president or president regarding problems. Joan Schneider, Koehnen's wife, is the president of S & K. Besides telling Koehnen to stop bothering him, Cummings did not complain to Koehnen or Schneider about the alleged sexual harassment.

Cummings was not recalled from a seasonal layoff on March 12, 1994. On September 13, 1994, Cummings filed a complaint with the Minnesota Department of Human Rights (MDHR). After an investigation, on July 14, 1995, the MDHR found probable cause to believe that an unfair discriminatory practice had been committed by S & K. Thereafter, on October 27, 1995, Cummings served respondents with a summons and complaint alleging, among other things, sexual harassment.

By order dated May 3, 1996, the district court entered partial judgment dismissing Cummings' sexual harassment claim under the Minnesota Human Rights Act (MHRA). Relying on federal cases dismissing claims of same-sex sexual harassment on the grounds that the alleged harassment was not because of the claimant's gender, the court concluded Cummings' claim fails because he did not provide evidence that Koehnen's conduct was because of Cummings' gender and therefore the claims were not "based on sex."

## ISSUE

█ Did the district court err in granting summary judgment against Cummings on the grounds that Cummings failed to establish the alleged sexual harassment was because of or based on sex?

## ANALYSIS

Because S & K included attachments to its motion to dismiss, the district court considered the matter under a summary judgment standard. If matters outside the pleadings are presented to and not excluded by the district court, the motion is treated as one for summary judgment. Minn.R.Civ.P. 12.03.

█ On appeal from summary judgment, a reviewing court determines whether any genuine issues of material fact exist and whether the district court erred in its application of the law. *Wartnick v. Moss & Barnett,* 490 N.W.2d 108, 112 (Minn.1992). In doing so, the court views the evidence in the light most favorable to the nonmoving party. *State by Beaulieu v. City of Mounds View,* 518 N.W.2d 567, 571 (Minn.1994). No deference need be given to the district court's application of the law. *Frost–Benco Elec. Ass'n v. Minnesota Pub. Utils. Comm'n,* 358 N.W.2d 639, 642 (Minn.1984).

The MHRA makes it an unfair employment practice, except when based on a bona fide occupational qualification,

[f]or an employer, because of * * * sex * * * to discriminate against a person with

respect to hiring, tenure, compensation, terms, upgrading, conditions, facilities, or privileges of employment.

Minn.Stat. § 363.03, subd. 1(2) (1996). The MHRA defines "discriminate," "for purposes of discrimination based on ˙sex," to include sexual harassment. Minn.Stat. § 363.01, subd. 14 (1996).

"Sexual harassment" includes unwelcome sexual advances, requests for sexual favors, sexually motivated physical contact or other verbal or physical conduct or communication of a sexual nature when:

(1) submission to that conduct or communication is made a term or condition, either explicitly or implicitly, of obtaining employment * * *;

(2) submission to or rejection of that conduct or communication by an individual is used as a factor in decisions affecting that individual's employment * * *;

(3) that conduct or communication has the purpose or effect of substantially interfering with an individual's employment * * * or creating an intimidating, hostile, or offensive employment * * * environment; and in the case of employment, the employer knows or should know of the existence of the harassment and fails to take timely and appropriate action.

*Id.* at subd. 41 (1996).

■ Statutory interpretation presents a question of law, which an appellate court reviews de novo. *State v. Sebasky*, 547 N.W.2d 93, 99 (Minn.App.1996) (citing *Hibbing Educ. Ass'n v. Public Employment Relations Bd.*, 369 N.W.2d 527, 529 (Minn. 1985)). The objective of statutory interpretation is to ascertain and effectuate the intention of the legislature. *State ex rel. Graham v. Klumpp*, 536 N.W.2d 613, 615 (Minn.1995) (citing Minn.Stat. § 645.16 (1996)). Words of a statute generally should be given their ordinary meaning. Minn.Stat. § 645.08(1) (1996). If a statute is clear and unambiguous, the language of the statute determines its meaning. Minn.Stat. § 645.16 (1996). "Thus, in the absence of ambiguous language, we may not consider legislative history or intent except as it is embodied in the statute's terms." *Sebasky*, 547 N.W.2d at 99 (citations omitted).

■ The MHRA prohibits sexual harassment. Minn.Stat. § 363.03, subd. 1(2). Sexual harassment is defined to include "verbal or physical conduct or communication of a sexual nature" that creates "an intimidating, hostile or offensive" employment environment. Minn.Stat. § 363.01, subd. 41. The definition of sexual harassment does not require an inquiry into the gender or sexual orientation of either the harasser or the victim. The only requirement is that the conduct or communication be of a sexual nature. Accordingly, we conclude a plain reading of the statute allows a claim of sexual harassment, without regard to the harasser or victim's gender or sexual orientation, if a victim can prove a harasser's verbal or physical conduct or communication was of a sexual nature, and created an intimidating, hostile, or offensive employment environment.

■ This interpretation is consistent with the Commissioner of the Minnesota Department of Human Rights' interpretation of the MHRA. The interpretation of the agency charged with enforcing a statute is entitled to great weight. *Minnesota Mining & Mfg. Co. v. State*, 289 N.W.2d 396, 400 (Minn. 1979).

In addition, this interpretation is consistent with several recent Title VII decisions. *See, e.g, Quick v. Donaldson Co.,* ˙90 F.3d 1372 (8th Cir.1996) (heterosexual male's claim of sexual harassment by heterosexual male coworkers presents triable issues not properly disposed of by summary judgment); *Gerd v. United Parcel Serv.*, 934 F.Supp. 357 (D.Colo.1996) (same sex sexual harassment claims should not be resolved by summary judgment); *Tanner v. Prima Donna Resorts, Inc.*, 919 F.Supp. 351 (D.Nev.1996) (sexual preference of the harasser is irrelevant to a Title VII claim).

The supreme court has stated that the MHRA "does not impose a duty on the employer to maintain a pristine work environment." *Continental Can Co., Inc. v. State*, 297 N.W.2d 241, 249 (Minn.1980). This court stated in *Klink v. Ramsey County by Zacharias*, 397 N.W.2d 894, 901 (Minn.App.1986):·

Foul language and vulgar behavior in the workplace does not automatically trigger an actionable claim of sex discrimination by a worker who finds such language and conduct offensive or repulsive.

Here, however, the direct evidence, viewed in the light most favorable to Cummings, raises material questions of fact as to whether Koehnen's conduct constituted sexual harassment under the MHRA. Therefore, the district court erred in determining Cummings did not establish a prima facie case of sexual harassment.

## DECISION

The MHRA prohibits unwelcome verbal or physical conduct or communication of a sexual nature that creates an intimidating, hostile, or offensive work environment, without regard to the harasser's or victim's gender or sexual orientation. Accordingly, the district court erred in granting summary judgment.

**Reversed.**