*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A14-2212**


State of Minnesota,
Respondent,

vs.

Jacoby Kindred,
Appellant.


**Filed January 4, 2016**
**Affirmed**
**Halbrooks, Judge**
**Dissenting, Peterson, Judge**


Ramsey County District Court
File No. 62-CR-13-9474

Lori Swanson, Attorney General, St. Paul, Minnesota; and

John J. Choi, Ramsey County Attorney, Thomas R. Ragatz, Assistant County Attorney, St. Paul, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Anders J. Erickson, Assistant Public Defender, St. Paul, Minnesota (for appellant)


Considered and decided by Halbrooks, Presiding Judge; Peterson, Judge; and

Reyes, Judge.

UNPUBLISHED OPINION

**HALBROOKS**, Judge

Appellant challenges his two convictions of first-degree criminal sexual conduct, arguing that the state failed to prove beyond a reasonable doubt that he had a significant relationship with the victims as required under Minn. Stat. § 609.342, subd. 1(h)(iii) (2012). We affirm.

## FACTS

Appellant Jacoby Kindred Sr. lived with his wife in an apartment complex next to his son and his son's girlfriend, L.L.D. Appellant's son and L.L.D. have two children together, and L.L.D. has two daughters, J.V. and X.V., from a previous relationship. Even though appellant is not related to J.V. and X.V., he formed a familial connection with the girls. When the relationship between appellant's son and L.L.D. ended, appellant kept in contact with the girls and continued to spend time with them. J.V. and X.V. contend that, while at appellant's home, appellant would sometimes sexually molest them. The girls testified that this occurred on multiple occasions over the course of approximately ten years.

In July 2013, L.L.D. filed a complaint with the St. Paul Police Department after which an investigation ensued. On December 11, 2013, appellant was charged with two counts of first-degree criminal sexual conduct under Minn. Stat. § 609.342, subd. 1(h)(iii). A jury trial was scheduled for May 19, 2014, but appellant fired his attorney after jury selection had begun. The district court allowed appellant's counsel to withdraw and continued the case to July 14-17, 2014, at which point appellant proceeded to trial

with new counsel. Appellant testified on his own behalf and denied all charges against him. During deliberations, the district court granted the jury's request to review a video interview of J.V. conducted by a case manager at the Midwest Children's Resource Center (MCRC). The jury found appellant guilty on both counts, and he was sentenced to two consecutive 144-month terms in prison. This appeal follows.

**D E C I S I O N**

**I.**

Appellant argues that the evidence was insufficient to prove beyond a reasonable doubt that he had a significant relationship with J.V. and X.V. as required under Minn. Stat. § 609.342, subd. 1(h)(iii). In considering a claim of insufficient evidence, this court conducts a painstaking analysis of the record to determine whether the evidence, when viewed in the light most favorable to the conviction, is sufficient to allow the jurors to reach the verdict that they did. *State v. Webb*, 440 N.W.2d 426, 430 (Minn. 1989). The reviewing court must assume that "the jury believed the state's witnesses and disbelieved any evidence to the contrary." *State v. Moore*, 438 N.W.2d 101, 108 (Minn. 1989). "This is especially true where resolution of the case depends on conflicting testimony, because weighing the credibility of witnesses is the exclusive function of the jury." *State v. Pieschke*, 295 N.W.2d 580, 584 (Minn. 1980). The reviewing court will not disturb the verdict if the jury, acting with due regard for the presumption of innocence and the requirement of proof beyond a reasonable doubt, could reasonably conclude the defendant was guilty of the charged offense. *Bernhardt v. State*, 684 N.W.2d 465, 476-77 (Minn. 2004).

3

The state charged appellant with two counts of first-degree criminal sexual conduct under Minn. Stat. § 609.342, subd. 1(h)(iii). To maintain convictions under this statute, the state had to prove beyond a reasonable doubt that appellant had a significant relationship with J.V. and X.V. Minn. Stat. § 609.342, subd. 1(h)(iii). A significant relationship exists if it can be found that appellant is "an adult who jointly resides intermittently or regularly in the same dwelling as the complainant and who is not the complainant's spouse." Minn. Stat. § 609.341, subd. 15(3) (2012). Appellant urges this court to find that the girls did not "reside" with him in a manner intended by the statute because they resided with their mother and only stayed overnight at his home "sometimes." He argues in the alternative that, even if the girls technically resided with him during their stays, they did not reside frequently enough with him to qualify as "intermittently or regularly."

This court has previously concluded that when the "significant relationship" element of the statute is challenged, "[t]o reside means to 'live, dwell, abide, sojourn, stay, remain, lodge . . . [or] have a settled abode for a time.'" *State v. Sebasky*, 547 N.W.2d 93, 100 (Minn. App. 1996), *review denied* (Minn. June 19, 1996) (quoting *Black's Law Dictionary* 1308 (6th ed. 1990)). In *Sebasky*, one of the complainants slept at Sebasky's home on weekends. *Id.* at 96. We found that the "frequent but discontinuous" overnight stays were "sufficient to show Sebasky had a significant relationship" with the complainants to support his conviction under Minn. Stat. § 609.342 (2012). *Id.* at 100. Appellant argues that his case is distinguishable from *Sebasky* in that the only evidence the state presented was that J.V. and X.V. "sometimes" stayed

4

overnight at appellant's dwellings, asserting that the state failed to provide any evidence establishing the number of times or the length of time they stayed with him. But the state is not required to quantify the exact number of visits in order to satisfy a conviction if testimony otherwise supports one under the requirements of Minn. Stat. § 609.342, subd. 1(h)(iii).

Appellant urges this court to overrule *Sebasky*, arguing that our construction of the definition of "reside" was an illegitimate one. He asserted at oral argument that because *Black's Law Dictionary* no longer contains a definition for reside, we should hold that the definition adopted in *Sebasky* no longer controls. But simply because *Black's Law Dictionary* no longer includes a definition of "reside" in its most recent edition does not mean that *Sebasky* is invalid. The definition adopted by this court in *Sebasky* includes, in addition to words that connote permanency, the words "stay" and "sojourn," which distinctly do not refer to one's permanent residence. *The American Heritage Dictionary of the English Language* 1664, 1708 (5th ed. 2011) (defining "stay" to include "to remain or sojourn as a guest or lodger" or "to remain during" and "sojourn" to include a "temporary stay").

In his motion for judgment of acquittal, appellant argued that "[t]here was no evidence at trial that the victims slept over night at [appellant's] home more than once or twice over an 8-year period." But the victims testified that they visited his home "a lot" over the course of nearly a decade, and the victims' cousin also testified that J.V. and X.V. occasionally stayed overnight at appellant's home. Even appellant testified that J.V. and X.V. would sleep over on weekends, which continued even after appellant and his

wife moved from the residence next to where J.V. and X.V. lived to one farther away. Even though appellant was not related to J.V. and X.V. by blood, adoption, or marriage, he consistently held himself out as their grandfather. J.V. and X.V. called appellant "grandpa," and he maintained a relationship with them even after their mother broke up with his son. He treated them as family, "like a regular granddad would do with his grandchildren." It is undisputed that this included spending time with them overnight.

The jury engaged in credibility determinations when it found appellant guilty on both counts of first-degree criminal sexual conduct. The issue of credibility is particularly striking in this case because appellant's position has at all times been diametrically opposed to that of J.V. and X.V. The jury had to weigh conflicting testimony and believe either appellant or the victims. The district court found that

> the jury did conclude beyond a reasonable doubt that there was intermittent residing together and that the testimony supported that conclusion. I am finding that the victims did spend nights at the [appellant]'s apartment and then, later, on occasions at his home in Maplewood, that these stays continued from time to time between the victims' ages of six and eight when they began and continuing into their teenage years.

Based on the record before this court, we conclude that the evidence was sufficient to show that appellant had a significant relationship with J.V. and X.V. and that this supports a conviction under Minn. Stat. § 609.342, subd. 1(h)(iii).

## II.

Appellant claims that the district court erred by granting the jury's request during deliberations to replay the video of J.V.'s interview at MCRC. The district court has

6

broad discretion to respond to jury requests to review evidence. *State v. Kraushaar*, 470 N.W.2d 509, 514 (Minn. 1991). The district court may allow the jury to review specific evidence in open court during deliberations after notice to the parties and an opportunity to be heard. Minn. R. Crim. P. 26.03, subd. 20(2). When exercising that discretion, the district court should take into account whether (1) the material will aid the jury in proper consideration of the case; (2) any party will be unduly prejudiced by submission of the material; and (3) the material may be subjected to improper use by the jury. *Kraushaar*, 470 N.W.2d at 515. Because "[t]he decision to grant a jury's request to review evidence is within the discretion of the district court, . . . we will not overturn it absent an abuse of that discretion." *State v. Everson*, 749 N.W.2d 340, 345 (Minn. 2008).

Here, the district court received a request from the jurors to replay J.V.'s interview after deliberations had begun. The district court gave the parties an opportunity to respond to the question and to argue the merits of their positions. The district court noted appellant's concern that allowing the jury to review that interview would "unfairly subjugate the rest of the trial" but decided that it was appropriate to play the video for the jurors one more time. While the district court did not make explicit findings that appellant would not be unduly prejudiced by the jury's review of the interview, it followed the procedure outlined in Minn. R. Crim. P. 26.03, subd. 20(2), and made very clear to the jurors that it would only allow them a single opportunity to review the tapes. The copies of the transcript of the interview were immediately collected, and the jury resumed deliberations. We conclude that the district court properly weighed the reasonableness of and placed appropriate limitations on the jury's request.

Even if the district court erred by granting the jury's request, the error would be subject to harmless-error analysis. *Everson*, 749 N.W.2d at 346; *Kraushaar*, 470 N.W.2d at 516. In *Kraushaar*, the supreme court found that replaying a victim interview was nonprejudicial because

> (i) the videotape viewed in the jury room was no different from the videotape that the jury would have seen in the courtroom, (ii) at worst, the replaying of the tape allowed the jury to rehear what it had already heard, (iii) the testimony of the victim was positive and consistent and was corroborated by other evidence, and (iv) it is extremely unlikely that the replaying of the tape by the jury affected the verdict as by prompting the jury to convict where it otherwise would not have done so.

470 N.W.2d at 516. The supreme court engaged in a review for prejudicial error in large part because the district court allowed the videotaped interviews to be played in the jury room rather than in open court. *Id.* at 516-17. It nevertheless concluded that allowing the jury to review the evidence in the jury room was nonprejudicial. *Id.* at 516. Here, the district court did not make the same error. The video was played with accompanying transcripts in open court. This weighs against appellant's argument that the district court erred under Minn. R. Crim. P. 26.03, subd. 20(2).

In *Everson*, the supreme court reached the same conclusion as in *Kraushaar*, finding that "[t]he jury, in reviewing the recorded statements in their entirety one additional time, was simply rehearing what it had already heard in the same place it had already heard the evidence. The substance of the statements was consistent with other evidence in the trial." *Everson*, 749 N.W.2d at 346. The supreme court concluded that

there was "no reasonable possibility that the jury's rehearing of these statements caused it to convict where it otherwise would not have done so." *Id.* at 347 (quotation omitted).

Appellant's claim fails because (1) the parties were given an opportunity to argue the merits on the record, (2) the interview was played in open court, and (3) the tapes were consistent with trial testimony. Appellant cannot demonstrate that a new trial is required simply because the jury saw the interview a second time in open court, particularly when corroborative evidence suggests that the jury would reasonably have reached the same conclusion. For these reasons, the district court did not err by allowing the jury to replay the interview of J.V.

**III.**

Appellant argues in his pro se supplemental brief that he was denied effective assistance of counsel. A criminal defendant has the constitutional right to reasonably effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 687-88, 104 S. Ct. 2052, 2064 (1984). In order to succeed on an ineffective-assistance-of-counsel claim, "[t]he defendant must affirmatively prove that his counsel's representation 'fell below an objective standard of reasonableness' and 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Gates v. State*, 398 N.W.2d 558, 561 (Minn. 1987) (quoting *Strickland*, 466 U.S. at 688, 694, 104 S. Ct. at 2064, 2068). "A strong presumption exists that counsel's performance fell within a wide range of reasonable assistance." *State v. Lahue*, 585 N.W.2d 785, 789 (Minn. 1998).

9

Appellant alleges that his trial counsel's failure to challenge the admissibility of significant-relationship evidence at the omnibus hearing was "not a reasonable tactic that a competent attorney would have made." "Generally, we will not review an ineffective-assistance-of-counsel claim that is based on trial strategy." *State v. Vang*, 847 N.W.2d 248, 267 (Minn. 2014). Here, appellant seems to argue that his counsel's failure to object was not a tactical decision. But he asserts, "Since the factual predicate to the State's charges was known to the prosecution and defense attorney at least through the State's motion of discovery materials, trial counsel was ineffective for failing to challenge the State's significant relationship charges at counsel's first chance to make such challenges."

To meet *Strickland*'s first prong, appellant must overcome the strong "presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S. Ct. 158, 164 (1955)). Here, the record supports a conclusion that appellant's representation was not ineffective because an objection to the "significant relationship" element of the conviction would have been premature at that point. Whether appellant had a significant relationship with J.V. and X.V. was a factual determination that depended upon testimony at trial. The jury was entitled to hear testimony from all witnesses regarding the number of overnight stays to determine whether that frequency satisfied the statutory requirements. Defense counsel's failure to challenge the admissibility of the significant relationship evidence at the omnibus hearing

10

was neither unreasonable nor prejudicial.  Therefore, appellant has not met his burden under *Strickland*.

**Affirmed.**

**PETERSON**, Judge (dissenting)

I respectfully dissent because I do not agree that the evidence was sufficient to show that appellant had a significant relationship with J.V. and X.V., which was required for appellant's convictions under Minn. Stat. § 609.342, subd. 1(h)(iii) (2012). To prove a significant relationship, the state needed to prove that appellant was "an adult who jointly reside[d] intermittently or regularly in the same dwelling as the complainant." Minn. Stat. § 609.341, subd. 15(3) (2012) (defining "significant relationship"). Although I agree with the majority that the definition of "reside" that this court applied in *State v. Sebasky*, 547 N.W.2d 93 (Minn. App. 1996), *review denied* (Minn. June 19, 1996), does not refer only to one's permanent residence, I do not agree that the evidence showed that appellant resided in the same dwelling as J.V. and X.V.

In *Sebasky*, this court cited *Black's Law Dictionary*, which defined "reside," in part, as meaning to "live, dwell, abide, sojourn, stay, remain, lodge . . . [or] have a settled abode *for a time*." *Id*. at 100 (emphasis added).[1] The majority acknowledges that this definition includes words that connote permanency but concludes that because the ordinary meaning of "stay" includes "to remain or sojourn as a guest or lodger" and the

---

[1] The complete *Black's Law Dictionary* definition of "reside" was:

> Live, dwell, abide, sojourn, stay, remain, lodge. To settle oneself or a thing in a place, to be stationed, to remain or stay, to dwell permanently or continuously, to have a settled abode for a time, to have one's residence or domicile; specifically, to be in residence, to have an abiding place, to be present as an element, to inhere as a quality, to be vested as a right. A foreign business corporation, for venue purposes, "resides" in county where its registered office and registered agent is located.

*Black's Law Dictionary* 1308 (6th ed. 1990) (citations omitted).

meaning of "sojourn" includes a "temporary stay," evidence that J.V. and X.V. visited appellant's home "a lot" and occasionally stayed overnight at his home was sufficient to prove that J.V. and X.V. resided in appellant's home.

This conclusion disregards the fact that all of the verbs in the *Sebasky* definition of "reside" are modified by the phrase "for a time." It is not enough to temporarily stay at a dwelling as a guest; the stay must be for a time that is sufficient to make the dwelling a residence. The issue here is whether J.V. and X.V. stayed at appellant's home for a time that was sufficient to prove that they resided with appellant. I do not agree that their temporary stays were sufficient.

In *Sebasky*, this court did not consider the meaning of any verb in the definition of "reside." This court simply concluded that, given the ordinary meanings of "reside" and "dwelling," the evidence was sufficient to prove that Sebasky and his victims intermittently resided in the same dwelling. *Id*. But the facts proved in *Sebasky* are significantly different from the facts in this case.

Sebasky owned a painting business and employed both of his victims on weekends to mix paint and carry supplies. *Id*. at 96. One victim, with his mother's permission, stayed overnight at Sebasky's apartment almost every weekend because the business required early morning starts. *Id*. The other victim "stayed over at Sebasky's house 70 to 80 percent of the time when he was working . . . and as many as six nights per week during the summer." *Id*. He also kept clothes at Sebasky's house. *Id*. This court concluded that the victims' "living arrangements at Sebasky's apartment fall within the purview of the statute. The complainants' frequent, but discontinuous, stays of two to six

days at a time are specifically covered by the statute's use of the term 'intermittently.'" *Id.* at 100.

Unlike the facts in *Sebasky*, the evidence in this case does not prove that J.V. and X.V. frequently stayed at appellant's home for two days or more or that they stayed on a regular basis. No evidence shows that J.V. and X.V. stayed overnight at appellant's home for more than one night at a time; the evidence shows only that single-night stays occurred occasionally, not frequently, during a several-year period. J.V. and X.V. also visited appellant's home a lot during the day without staying overnight.

To bolster its conclusion that a significant relationship existed between appellant and J.V. and X.V., the majority cites evidence that appellant held himself out as J.V.'s and X.V.'s grandfather and that he treated them "like a regular granddad would do with his grandchildren." The statutory definition of "significant relationship" includes a situation in which the actor is the complainant's grandparent by blood, marriage or adoption. Minn. Stat. § 609.341, subd. 15(2) (2012). But that was not appellant's situation, and the evidence that appellant held himself out as a grandfather is not evidence that a significant relationship existed.

The evidence shows that J.V. and X.V. had a close relationship with appellant; they visited his home a lot and occasionally stayed overnight. The duration of their stays was similar to those of a child who visits a best friend often and occasionally stays overnight at the friend's house. Under the common meaning of "reside," I would not conclude that such a child resides at the friend's house. Similarly, I cannot conclude that the evidence was sufficient to prove that J.V. and X.V. resided in appellant's home.

Because the evidence was not sufficient to prove that appellant and his victims resided in the same dwelling, the state failed to prove that a significant relationship existed, and, consequently, failed to establish an element of a first-degree criminal-sexual-conduct offense in violation of Minn. Stat. § 609.342, subd. 1(h)(iii).  Therefore, I would reverse appellant's convictions.